**CHARLES RIVER PARK "A", INC., et al.**

v.

**The DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al., Appellants.**

No. 73–1930.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 9, 1974.

Decided March 10, 1975.

As Amended June 17, 1975.

Rehearing Denied Sept. 10, 1975.

---

* Judge Justice did not participate in this opinion.

Anthony J. Steinmeyer, Atty., Dept. of Justice, with whom Irving Jaffe, Acting Asst. Atty. Gen., Earl J. Silbert, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, were on the brief for appellants. Harold H. Titus, Jr., U. S. Atty. at the time the record was filed and John A. Terry, Asst. U. S. Atty., also entered appearances for appellants.

Arthur I. Cantor, Washington, D. C., for appellees.

Milton A. Smith, Richard Berman, Washington, D. C., Gerard C. Smetana, S. Richard Pincus and Paul J. Cherner, Chicago, Ill., filed a brief on behalf of The Chamber of Commerce of the United States of America urging affirmance.

Before LUMBARD,* Senior Circuit Judge for the Second Circuit, and TAMM and ROBINSON, Circuit Judges.

LUMBARD, Circuit Judge:

The Department of Housing and Urban Development (HUD) appeals from an order entered April 23, 1973, in the District Court for the District of Columbia, June L. Green, J., which enjoins HUD from disclosing certain financial information submitted to it by appellees to persons other than those in the federal government who had previously received it in the regular course of business. D.C., 360 F.Supp. 212. Because we feel that the record below is inadequate for the determination of the controlling questions, we remand for further proceedings.

Appellees [1] (collectively referred to as Charles River Park or CRP) operate three multi-family housing projects whose mortgages have been insured by the Federal Housing Administration (FHA), an agency of HUD. Because of FHA's potential financial liability in the event of a default in payments on the mortgage, Congress has given it considerable regulatory authority over the property it insures. See 12 U.S.C. § 1715k. One way in which the FHA exercises this authority is to require that insured mortgagors annually submit detailed financial reports.

This case arose in 1972 when HUD decided to honor a request by Theodore

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. The appellees are Charles River Park "A", Inc., a Massachusetts corporation; Charles River Park "B" Company, a Massachusetts limited partnership; Charles River Park "C" Company, a Massachusetts limited partnership; and Seon P. Bonan, Theodore J. Shoolman, and Jerome L. Rappaport, who are general partners in the two limited partnerships. The corporation and the two partnerships each operate a multifamily housing project.

V. Anzalone, Boston's Commissioner of Assessing, for information which would allow him to verify the gross income of the Charles River Park projects.[2] Anzalone stated that he needed the information in order to set assessments on the projects for real estate tax · purposes. When appellees learned that HUD was about to release the financial reports that they had submitted, they filed suit in the district court asking that HUD be enjoined from releasing the reports.

 The district court properly found that it had jurisdiction over this matter. See Administrative Procedure Act, 5 U.S.C. §§ 702, 703, 706(2)(A); Pickus v. United States Board of Parole, 165 U.S. App.D.C. 284, at 287–288, 507 F.2d 1107, 1110–1111 (1974). On the merits, the court found that the financial information involved was "confidential by its very nature" and that "[d]isclosure could clearly harm plaintiffs vis-a-vis their competitors." The court also found that "the information was furnished with the implied understanding that it would remain confidential." The court concluded that the information fell within the confidential financial information exception to the Freedom of Information Act, 5 U.S.C. § 552(b)(4). It therefore held that the Act had no applicability to this action. The court then concluded that 18 U.S.C. § 1905, a criminal statute that penalizes government employees who release trade secrets or financial data submitted to the government, provided CRP with an implied private right of action to have the release of this particular information enjoined. In addition, the court concluded that it would be in abuse of its discretion for HUD to release the information. It thereupon enjoined release of the financial information that CRP had submitted to the FHA.

Two problems are presented by the district court decision. First, in reaching its decision the district court heard no testimony and had no affidavits before it. It apparently based its decision on oral representations made by counsel and on exhibits attached to the motion papers that had been filed. After reviewing this record we conclude that it is insufficient to support the factual determinations made by the trial court. Second, the court did not analyze properly the issues involved in applying the relevant statutory provisions.

## I

 The record before the district court was not an adequate basis for its findings. The court's statement that this information was confidential by its very nature and that its release could cause competitive harm was completely without evidentiary support. Similarly, there was no evidence concerning an understanding between HUD and CRP that the specific information at issue here was submitted in confidence. Although HUD had never before released this kind of information to nonfederal entities, that fact alone does not establish that the information was submitted in confidence. There was no evidence, for example, that CRP was aware of HUD's prior practices when it submitted the information. Moreover, even if CRP was aware of HUD's prior practices, it might have no claim of an implied promise of confidentiality. While HUD had told a congressional committee in 1972 that it had refused to honor requests for similar information because the requests "involved commercial and financial information or trade secrets furnished in confidence," it stated in the next sentence that it had always weighed the public interest before denying those requests. In this case HUD claims the public interest supports disclosure. Thus, the information might well have been released under HUD's prior practices. These factual questions could not

---

**2.** Subsequent requests for the same information were filed by the Boston City Council's Committee on Urban Development and by Cit- izens Housing and Planning Association of Metropolitan Boston, Inc.

be resolved on the basis of the information before the district court.[3] As subsequent discussion will show, the questions on which the district court made findings may be relevant to the question of whether an injunction should issue. Hence on remand it will be necessary for the district court to hold an evidentiary hearing.

II

Whether or not disclosure is proper, in view of such evidence as is developed at the evidentiary hearing, will also require consideration of the various statutes regulating disclosure of information held by the government. The most important statute in this field is the Freedom of Information Act, 5 U.S.C. § 552, which provides that government agencies shall make identifiable records available to members of the public on request. 5 U.S.C. § 552(a)(3). However, from this requirement there is an exception of matters that are "(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b).

HUD argues that this exemption does not cover the requested information and that disclosure is therefore required by the Act. It contends that the information sought here is not *confidential* financial information. The district court found that the information was confidential. However, it did not apply the proper tests in reaching that conclusion.

■ We have recently had occasion to discuss in detail the criteria for determining whether information falls within the fourth exemption. After a review of the legislative history to ascertain the purposes of the exemption, we laid down two tests for determining whether financial information is confidential within the meaning of the FOIA: "[C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." National Parks & Conservation Assn. v. Morton, 162 U.S.App.D.C. 223, 498 F.2d 765, 770 (1974). See Petkas v. Staats, 163 U.S.App.D.C. 327, 501 F.2d 887 (1974); Casenote 88 Harv.L.Rev. 470 (1974).

■ On remand the district court should hear evidence relevant to whether this information is confidential under either of the above tests. If it is not found to be confidential under the FOIA, it must be disclosed on request even if it was submitted in confidence. Petkas v. Staats, *supra,* at 889.[4]

---

**3.** In addition to a copy of the congressional hearings, the motion papers contained a July 5, 1972, HUD policy statement on the release of information, where it was indicated that "although certain types of records are not subject to the mandatory disclosure requirements of the [FOIA], even these shall be made available upon request unless there is need in the public interest to withhold them"; a copy of the regulations implementing that policy, 24 C.F.R. § 15; copies of the agreements between the FHA and CRP; and a FHA handbook explaining what information the FHA requires in financial reports.

There is some support for the trial court's conclusions in the legislative history of the FOIA. For example, the House Report indicates that the exemption was meant to encompass "technical or financial data submitted by an applicant to a Government lending or loan guarantee agency." H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966). See also S.Rep.No. 813, 89th Cong., 1st Sess. 9 (1965), U.S.Code Cong. & Admin.News 1966, pp. 2418, 2427.

**4.** The hearing on this issue would not be a de novo evidentiary hearing on the facts constituting the basis for the agency's decision. Such a hearing would not, of course, be appropriate under Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

A plaintiff in a suit such as this is obviously entitled to no relief if the government could be forced to disclose the information it wishes to reveal in a suit under the FOIA. Thus, the district court should hold a hearing to determine whether the information involved here would have been exempt just as it would if a suit had been brought under the FOIA to compel disclosure. See 5 U.S.C. § 552(b)(3); Na-

■ Even if it is found that the information is confidential and that disclosure is not required by the Act, it is still necessary to determine whether HUD can release the information. CRP argues that the FOIA should be interpreted as prohibiting agency disclosure of information that falls within one of the Act's exceptions. While the district court rejected this argument, it has been accepted elsewhere. See, e. g., Westinghouse Elec. Corp. v. Schlesinger, Civil Action No. 118–74–A (E.D.Va. April 2, 1974).

■ The basic purpose of the FOIA is to promote disclosure of information; acceptance of CRP's argument would tend to subvert that purpose. Although the legislative history of the Act does not expressly resolve the question of whether the FOIA can be invoked to stop disclosure of information, at least one leading commentator has no difficulty in concluding that "[t]he Act contains no provision forbidding disclosure. . . . The exemptions protect against required disclosure, not against disclosure." K. Davis, Administrative Law Treatise § 3A.5 (1970 Supp.). His conclusion is supported by the legislative history of the recently enacted amendments to the FOIA which make it clear that the Act is not to be interpreted in any way as a restriction on government disclosure. S.Rep.No.93–854, 93d Cong., 2d Sess. 6

(1974); *cf.* H.R.Rep.No.93–876, 93d Cong., 2d Sess. (1973), in U.S.Code Cong. & Admin.News, pp. 6267, 6269.[5]

■ If we assume that the Freedom of Information Act does not apply to the information sought here, it must then be determined whether any other statute authorizes disclosure of the information. Such authorization is found in section 301 of Title 5 which provides that "[t]he head of an Executive department . . . may prescribe regulations for . . . the custody, use, and preservation of its records, papers, and property." Agency action taken under section 301 is subject to review under the Administrative Procedure Act (APA) to determine whether HUD's disclosure of the requested information would be an abuse of its discretion. See 5 U.S.C. §§ 701–06; Sears, Roebuck & Co. v. General Services Administration, 384 F.Supp. 996, 1000–01 (D.D.C.1974), *stay of district court order dissolved,* 166 U.S.App.D.C. 194, 509 F.2d 527 (1974).

CRP argues that the district court injunction can be justified by reference to 18 U.S.C. § 1905.[6] That provision of the criminal code makes it illegal for a government employee to disclose "to any extent not authorized by law any information coming to him in the course of his employment . . . which information concerns or relates to . . . the . . . amount or source of any income, profits, losses, or expenditures of any person."[7]

---

tional Parks & Conservation Assn. v. Morton, *supra.* In holding this hearing the district court is not reviewing agency action; it is making a threshhold determination whether the plaintiff has any cause of action at all.

5. The fact that the *National Parks* test for confidentiality looks in one instance to the effect of disclosure on the provider of the information is not at all inconsistent with this result. *National Parks* never stated that an individual had a right under the FOIA to block disclosure when the government wished to disclose information that it *was not required* to disclose. It simply stated a test to be used to determine whether information is confidential.

6. CRP urges us to find that it has the right to bring a private action to enjoin the violation of section 1905. While private rights of action have been allowed by the Supreme Court in a few cases, see Wyandotte Transp. Co. v. United States, 389 U.S. 191, 202, 88 S.Ct. 379, 19

L.Ed.2d 407 (1967), we do not think we should imply such a right unnecessarily. Here review under the APA, the normal method of reviewing agency action, is sufficient to safeguard any interests that section 1905 is supposed to protect.

7. Prior decisions of this court and other courts have made it clear that the FOIA's third exemption ("[The FOIA] does not apply to matters that are—. . . (3) specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)), does not incorporate section 1905 into the FOIA in such a way as to make section 1905 broader than the fourth exemption. Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578, 580 n.5 (1970). See Ditlow v. Volpe, 362 F.Supp. 1321, 1323–24 (D.D.C.1973), rev'd on other grounds, 161 U.S.App.D.C. 154, 494 F.2d 1073 (1974); M. A. Shapiro & Co. v. SEC, 339 F.Supp. 467, 469–70 (D.D.C.1972); Frank-

CRP argues, and we agree, that if the disclosure of the information involved here would constitute a violation of a criminal statute, it would be an abuse of discretion for an agency to ignore such a statutory mandate and release the information.

■■■ HUD argues that section 1905 has no applicability here because HUD rules promulgated pursuant to the FOIA permit disclosure of the information at issue here and that therefore disclosure is "authorized by law." We disagree. If we assume that this information falls within the fourth exemption, then the FOIA does not apply to it because the language of the FOIA clearly provides that the Act "does not apply to matters" that fall within an exception. 5 U.S.C. § 552(b). As indicated earlier the legislative history suggests that the FOIA is neutral with respect to exempt information; it neither authorizes or prohibits the disclosure of such information. There is no indication in the FOIA that suggests Congress intended to authorize the promulgation of regulations concerning exempt information under the FOIA.[8] Indeed, since section 301 deals with this question there was no reason for Congress to be concerned with the problem in the FOIA. The release of this information cannot be justified by regulations based on the FOIA.

■■■ The government also suggests that section 301 authorizes the release of information subject to section 1905. We disagree. To interpret section 301 in that way would be inconsistent with the legislative history. In 1958 an amendment was added to section 301 which provided that the section "does not authorize withholding information from the public or limiting the availability of records to the public." However, the sponsor of the amendment, Congressman Moss, stated explicitly that the amendment did "not affect the confidential status of information given to the government and carefully detailed in Title 18, United States Code, Section 1905." 104 Cong. Rec. 6550 (1958).[9] Section 301 does not au-

---

el v. SEC, 336 F.Supp. 675, 678–79 (S.D.N.Y. 1971), rev'd on other grounds, 460 F.2d 813 (2d Cir.), *cert. denied,* 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972).

Since only the FOIA's fourth exemption deals with matters covered by section 1905, consideration of section 1905 in FOIA cases is appropriate only when the information falls both within the fourth exemption and under section 1905.

8. HUD points to no section of the FOIA that authorizes the promulgation of regulations with respect to information that is exempt from the provisions of that Act.

In response to the statement in the FOIA that the Act does not apply to exempt information, HUD argues that we are presented with the rare case in which it is as clear as anything ever can be that Congress did not mean what in strict letter it said." Petition for Rehearing at 6, quoting J. C. Penney Co. v. Commissioner, 312 F.2d 65, 66 (2d Cir. 1962). In support of its contention HUD points to six sections of the FOIA which it alleges do deal with exempt information. See 5 U.S.C. §§ 552(a)(4)(B), (C), (D), 6(A), 6(C), (d). The first five of these provisions deal with the judicial procedures through which it is determined whether information is exempt. Until the determination is made, it cannot be said that the information is exempt. Thus, HUD is incorrect in suggesting that those five sections apply to exempt information.

The sixth section cited by HUD is 5 U.S.C. § 552(d) which requires federal agencies to submit annual reports to Congress regarding denials of requests for information made under FOIA and FOIA litigation. While such a report may deal with information that has been finally declared exempt, the requirement of such a report is certainly no basis for implying out of thin air the authority to promulgate regulations dealing with information which is the subject of the report.

9. The government suggests that our holding conflicts with Non-Resident Taxpayers Ass'n, v. Municipality of Philadelphia, 478 F.2d 456 (3d Cir. 1973). In that case there was only brief reference to section 301 and no mention was made of the legislative history of section 301 or of section 1905. Thus, it is unlikely that the court considered the arguments made here.

In any event, we would note that the information in that case would not be exempt under the FOIA because it was information generated entirely by the government. The fourth exemption of the FOIA applies only to information "obtained from a person." As a result, the issue we face here would not arise.

thorize regulations limiting the scope of section 1905.

Thus, the district court must determine whether the language of section 1905 encompasses the information sought here. In doing so, the court must bear in mind that section 1905 is a criminal statute and should be narrowly construed.

 If the district court concludes that section 1905 does not apply, the trial court must then decide whether HUD abused its discretion in deciding to release this information. In deciding whether it would be an abuse of discretion for HUD to release the information involved here, the district court must only review the administrative record made by HUD when it decided to release the information. "If . . . there was such failure to explain administrative action as to frustrate effective judicial review, the remedy [is] . . . to obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary." *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). *See also Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–421, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In its decision the district court concluded that disclosure in this case would be an abuse of agency discretion. However, it does not seem to have considered the interest of the public in disclosure. On remand the trial court should give consideration to the public interest aspect since the body seeking the information is a local government body which intends to use the information in performance of the legitimate and traditional government function of assessing property for the purposes of taxation. If the public interest consideration supports disclosure of this information, the fact that it was submitted in confidence would not be enough to establish that the release of the information is an abuse of discretion.

On remand the district court should determine whether the information sought falls within the fourth exemption to the FOIA. In doing so it should apply the tests outlined above. If the FOIA is inapplicable, then the court must decide whether the agency's release of such information would be an abuse of its discretion. It must consider 18 U.S.C. § 1905 and determine whether the information sought falls within the specific prohibitions therein contained. If it does, it would be an abuse of discretion for HUD to release the information. If section 1905 does not apply the district court must balance the interests of the tax assessor and the public in accurate tax assessments against the interests of CRP in keeping the information confidential in determining whether HUD would abuse its discretion if it released the information. If it is necessary to strike this balance the district court should consider ways in which the interests of both parties may be accommodated. For example, it seems unlikely that all of the information filed with HUD would be of proper concern to Boston's tax assessor. Thus, it might be appropriate to release certain specified parts of the requested document to the assessor on the condition that he keep them confidential.

An evidentiary hearing will be necessary since the present record is not sufficient to make the above determination.[10]

---

10. In its petition for rehearing HUD characterizes our decision as unduly restrictive. We do not view it that way. When the district court makes its initial determination of whether this information falls within the fourth exemption of the FOIA, it must decide whether disclosure of this information will impede HUD's ability to gather such information in the future or substantially harm the competitive position of CRP. In face of HUD opposition, CRP could hardly prevail on the first question. As to competitive harm, if the district court decides to place restrictions on the amount of information given to the Boston tax assessor and/or the use he may make of it, the effect of disclosure on CRP's competitive postition should be viewed in light of those restrictions. While we do not purport to decide the question, it seems to us that it would be difficult for CRP to show that disclosure of its gross income to the Boston tax assessor under conditions ensuring the confidentiality of the information would substantially harm its competitive position.

On the other hand, CRP may well be able to show that broader disclosure would harm it. If it does make such a showing, the district

The injuction has been in effect for 25 months. It should remain in effect until the district court reaches a decision after holding further hearings.

Remanded for further proceedings.

court might well be justified in not permitting such broader disclosure, especially if it appears that such disclosure would violate section 1905.