## PLANNING RESEARCH CORPORATION, Appellant,

v.

## FEDERAL POWER COMMISSION et al.

### No. 75–1540.

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1976.

Decided March 10, 1977.

Edward F. Canfield, Washington, D.C., with whom Joseph E. Casey, Washington, D.C., was on the brief, for appellant.

Allan M: Garten, Washington, D.C., for appellee F. P. C. Drexel J. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, Allan Abbot Tuttle, Sol. and Kenneth E. Richardson, Asst. to the Gen. Counsel, F. P. C., Washington, D.C., were on the brief, for appellee. Edward R. Minor, Washington, D.C., also entered an appearance for appellee F. P. C.

John M. Liftin, Washington, D.C., entered an appearance for appellee Associated Press.

Before BAZELON, Chief Judge, McGOWAN and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge McGOWAN.

McGOWAN, Circuit Judge:

In this "reverse-Freedom of Information Act" case, appellant, a supplier of services under a contract with the Federal Power Commission, sought in the District Court to prevent the Commission from complying with a request by a third party under the Act for information about the contract. The District Court granted a pretrial motion to dismiss the complaint for want of subject-matter jurisdiction; and this appeal is from that action. For the reasons herein-after set forth, we hold that the District Court had jurisdiction to entertain the suit.

## I

In May, 1974, the Commission issued a Request for Proposal (RFP No. FP–7074), together with technical specifications, seeking bids for the development and implementation of a computer based regulatory information system. In response to the RFP, appellant Planning Research Corporation (PRC) submitted a methodology for the development of the system, including some 1200 pages of detailed, highly-technical descriptions relating to its proposed undertaking. Following detailed analysis of the bid proposals by staff members of the FPC, PRC was awarded the contract on June 29, 1974.

A formal request was filed by the Associated Press (AP) on November 5, 1974 pursuant to FOIA for release of the contract. Alternatively, AP requested release of those portions of the contract not exempt from the disclosure provisions of FOIA. AP's request was submitted by the Commission to the United States Department of Justice under the terms of 28 CFR 50.9.[1] The Commission's letter of transmittal of November 22, 1974, was accompanied by a proposed letter to AP denying the latter's request in part on the basis of Exemption 4 of FOIA, 5 U.S.C. § 552(b)(4).[2] The Commission requested advice as to the propriety

1. Section 50.9 states in part:
   (a) No civil action against a federal agency under the Freedom of Information Act, 5 U.S.C. 552, shall be defended by the Civil Division, the Tax Division or any other part of the Department of Justice unless the Department's Freedom of Information Committee has been consulted by the agency.
   .  .  .  .  .
   (c) The Committee is instructed to make every possible effort to advance the objective of the fullest responsible disclosure. To this end, in connection with its consultations with agencies that proposed to issue final denials under the Act, the Committee shall, in addition to advising the agency with respect to the legal issues, invite the attention of the agency to the range of public policies reflected in the Act, including the central policy of the fullest responsible disclosure. The Committee may also request assistance and make studies and recommendations to carry out the intent of this paragraph.

2. (b) This section does not apply to matters that are—
   .  .  .  .  .
   (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential.

of this action. The Commission's letter characterized the document in question as

"exempt from the Freedom of Information Act requirements in that it represents the ultimate summation of PRC's methodology, in terms of corporate strategy, management techniques, and state-of-the-art technology, for entry into a new business area. It discloses in detail the company's techniques for informational system analysis, design, and verification, system implementation, facility planning, operation and maintenance, and project management procedures. It reveals not only the company's criteria for hardware and software selection, but also detailed confidential evaluations of a number of hardware and software companies and their products. It describes in great detail the company's unique corporate approach to planning and executing large-scale projects, including specific blueprints for the company's every step in planning, installing, and operating a sophisticated computer facility. It offers innovative options, not solicited by the Request for Proposals, for dynamic system modeling and alternatives to the plan embodied in the Request for Proposals. It provides costing information in complete detail, the disclosure of which would enable any competitor to predict the company's pricing schedules with alarming accuracy in any bidding procedure. In short, it sets forth all of the company's trade and marketing secrets, developed over more than 20 years of experience at great expense, the disclosure of which to competitors would provide those competitors with a direct source of materials for their own proposals now being developed for the installation of similar computer systems in other agencies."

The record indicates that there was never any formal written response by the Department of Justice to the Commission's letter. A further letter of December 18, 1974 from the Commission's General Counsel to the Assistant Attorney General originally addressed recites that the latter had made his recommendation on December 9, 1974 "in the course of a conversation" with the Commission's Executive Director who had written the initial letter of November 22. This reference to "December 9, 1974" is apparently in error since a letter of that date from the Secretary of the Commission to counsel for AP refers to the Department of Justice's recommendation as having been made in a telephone call on December 5, 1974.

In any event, the Commission's understanding of the Department's oral advice is formulated in a Notice to Show Cause issued by it on December 23, 1974, in which it invited appellant and AP to show cause

"why the entire contract should not be released or, in the alternative, why it should not be released except for those portions thereof which are determined to be exempt from the disclosure requirements of the Freedom of Information Act, 5 U.S.C. 552(b)(4), unless otherwise required to be kept confidential by Federal Procurement Regulations, 41 CFR 1–3.103(b)."

In that Notice the Commission recited as follows:

On December 4, 1974, [sic] the Justice Department responded to the Commission's request by recommending as a basis for making a determination as to the material which should be publicly disclosed and that which should be withheld from public disclosure, the following criteria:

(a) From the entire contract, the Commission should extract the "essence of the contract"; that is, all of the provisions which, upon the execution of the contract, create a contract obligation on the part of PRC (failure of performance of which would constitute contract default). These provisions should be made available to the requester (AP).

(b) From the remainder of the contract, delete all material which is exempt from disclosure as constituting trade secrets, and commercial or financial information obtained from a person which is privileged or confidential under Exemption 4 of the Freedom of Information Act, 5 U.S.C. 552(b)(4).

The Notice further identified the determinations made by the Commission's Staff in the light of the criteria supplied by the Justice Department, and asserted that, since Justice had refused a further Commission request to review these particular determinations, the Commission had concluded that the fairest thing to do was to set the matter down for hearing before an Administrative Law Judge.

Such a hearing was held on January 2, 1975; and, on January 10, the ALJ issued a Tentative Initial Decision on which he scheduled oral argument for January 21. In his Tentative Initial Decision, Judge Zwerdling noted that the controversy to be resolved derived from appellant's objection to the disclosure of the following technical materials in its bid proposal, which he characterized as "included by reference" in its resulting contract with the Commission:

(1) Vol. II, Parts A, B, C, and D, *in their entirety.*[3]

(2) Vol. III, *in its entirety.*

(3) June 18, 1974 "Letter of Cost Clarification," with enclosures.

(4) June 27, 1974 "Letter of Cost Clarifications."

Judge Zwerdling went on to say that, following the hearing before him, he had (as he was authorized by the Commission to do in the Notice) "made a detailed *in camera* inspection of this material in its entirety," which he described as consisting of "some 1200 pages of tremendously detailed and highly-technical descriptions relating to PRC's proposed undertaking" for the development and implementation of the Commission's regulatory information system. He concluded that "this material represents trade secrets and confidential commercial information within the meaning" of Exemption 4 of FOIA, and "is therefore not subject to the mandatory disclosure requirement of that Act."

Judge Zwerdling then turned to the question of whether the Commission, although not bound to do so by the Act, should nevertheless exercise the discretion possessed by it in favor of releasing the material.[4] He

**3.** With this phrase the ALJ apparently intended to refer to Vol. II as a whole.

**4.** In *Charles River Park "A", Inc. v. HUD*, 171 U.S.App.D.C. 286, 293, 519 F.2d 935, 942 (1974), this court recognized that, even though requested information may fall within one of the FOIA exemptions, the agency is not thereby divested of power to make the information public. The legislative history of the Act supports this construction. The Report of the Senate Committee on Judiciary in connection with the 1974 amendments said as follows:

Congress did not intend the exemptions in the FOIA to be used either to prohibit disclosure of information or to justify automatic withholding of information. Rather, they are only *permissive.* They merely mark the outer limits of information that *may* be withheld where the agency makes a specific affirmative determination that the public interest and the specific circumstances presented dictate—as well as that the intent of the exemption relied on allows—that the information *should* be withheld. The Attorney General reemphasized the point in his memorandum explaining the FOIA to government agencies:

Agencies should also keep in mind that in some instances the public interest may best be served by disclosing, to the extent permitted by other laws, documents which they would be authorized to withhold under the exemptions. (Attorney General's *Memorandum on the Public Information Section of the APA*, June 1967, at 2–3.) A number of agencies have by regulation adopted this position that, notwithstanding applicability of a FOIA exemption, records must be disclosed where there is no compelling reason for withholding . . . . This approach was clearly intended by Congress in passing the FOIA.

S.Rep.No.93–854, 93d Cong., 2d Sess. 6 (1974). In the same vein Professor Kenneth C. Davis has written:

The Act contains no provision forbidding disclosure. It requires disclosure of all records except what is "specifically" within the nine exemptions and other provisions. The exemptions protect against required disclosure, not against disclosure. The Act leaves officers free to disclose or withhold records cov-

recommended against such exercise for the reasons that

(1) the material "clearly falls within the provision of the Federal Procurement Regulations Section 1–3.103(b), that '. . . in no event will an offeror's cost breakdown, profit, overhead rates, or other confidential business information be disclosed to any other offeror;' " and

(2) PRC had already delivered to AP Vol. I, Executive Summary, a document of some 59 pages which PRC had initially furnished to the Commission in response to its request for a summary which would "permit management review of the total project without going through the technical details."

Under these circumstances, the ALJ professed to be "unable to find any significant 'public right to know interest' which could outweigh the need for protection of private interests and property rights involved here, or which would make it necessary or desirable in the public interest to make public disclosure of this 1200 pages of highly technical and detailed material."

On January 31, 1975—ten days after hearing oral argument on his Tentative Initial Decision—Judge Zwerdling adopted that decision as his final Initial Decision, adding some Supplementary Comments. In the course of those comments he stated that it appeared from the record "that the basic terms of the contract *have* been made available in (1) the public file containing the Commission's invitation for bids, setting forth the specifications relating to the contract, plus (2) (Vol. I, Executive Summary (Exhib. 10)), consisting of some 59 pages

summarizing the technical volumes of the PRC proposal." It is clear from the hearing transcript that, in the opinion of the ALJ, "any parties who wish to know what is in the contract in terms of the basic responsibility of PRC is [sic] able to determine that by reference to the public file plus Exhibit 10, the executive summary." J.A. 159.

On March 24, 1975, the Commission issued its opinion and order. It denied disclosure as to (1) some parts, but not all, of Vol. II, (2) Vol. III, and (3) the June 18 and 27, 1974 cost clarification letters.[5] But it rejected the ALJ's determination that *all* of Vol. II should be withheld as well. In reaching its conclusion to this effect, the Commission purported to adhere faithfully to the criteria verbally supplied it by the Department of Justice, that is to say, it looked first to see if the material was "of the essence of the contract"; if it was, its inquiry went no further. This proved to be the case with respect to what the Commission somewhat cryptically characterized as "[m]uch of the information in Volume II . . . ." It criticized the ALJ's Initial Decision because, as the Commission put it, the ALJ "merely concludes that all the contract materials are trade secrets without any consideration of which parts may involve the essence of the contract . . . ."

PRC sued in the District Court to enjoin the Commission from releasing any of the information contained in Volume II, which it alleged to be protected by Exemption 4 of FOIA and Federal Procurement Regulation, Section 1–3.103(b). The District Court's dismissal for lack of jurisdiction was

---

ered by the exemptions, but they may then be governed by other statutory law, by the common law, by executive privilege, by executive orders, or by agency-made law in the form of regulations, orders, or instructions. Many statutes confer discretionary power upon agencies to disclose or not disclose specified information, and many statutes require or prohibit such disclosure . . . .

Davis, Administrative Law Treatise, 1970 Supplement, § 3A.5, at 122. Professor Davis's 1976 Supplement, at 58 ff., reaffirms this position.

5. These were the materials which the Commission Staff urged should be withheld. The Commission found, first that these particular mate-

rials were not "part of the essence of the contract;" and, second, that they were within Exemption 4. The Commission recognized that this second finding did not end the matter, and that it was required to bring its discretion to bear on possible disclosure. *See* note 4, *supra.* It concluded not to disclose because of its feeling that the information in question "can be viewed as being particularly detrimental to PRC in its competition with others." It also thought that "Section 1–3.103(e) [sic; (b)] of the Federal Procurement Regulations" prohibited disclosure of these items.

grounded in its belief that PRC's claim sounded in contract and was appropriate for resolution only by the Court of Claims.

## II

The only issue we are called upon by this appeal to resolve definitively is that of the District Court's jurisdiction *vel non* over the subject matter of appellant's complaint. In this instance, as is sometimes the case, the jurisdictional issue is entangled to some degree with that of the merits; and we therefore inquire first into the nature of that latter issue.

Our reading of the record suggests that, if appellant has indeed suffered injury at the hands of the Commission, it is by reason of the way in which the Commission went about deciding what to do with AP's FOIA request. The Commission, in sharp contrast with the ALJ, rigidly adhered to the telephonic advice received from the Department of Justice, that is to say it looked first to see whether any of the requested information was "of the essence of the contract," and only thereafter did it measure such remaining information as it found not to fit in that category against Exemption 4.[6] Having found in this instance that part of Volume II met the first test, it ordered that part to be released. The remaining material covered by the Show Cause Order "[n]ot

being part of the essence of the contract," as the Commission phrased it, was examined to see whether it fell within Exemption 4 and, even if it did, whether it should be disclosed. The result of this process was a determination that the material did fall within Exemption 4, and that the continuing discretion of the Commission should not be exercised in favor of disclosure. *See* Note 4, *supra.* Since AP, the requesting party under FOIA, has not sought review of the Commission's action, there is no controversy before us as to the result reached by the Commission in this second phase of its inquiry. What is challenged by appellant PRC is the propriety of the Commission's resolution of the issue of the disclosure of part of Vol. II solely by reference to "the essence of the contract" formula.[7]

That is, we think, a very serious and substantial issue. We know of no prior FOIA case in which this test has been used, much less regarded as exclusively determinative. It is certainly not a standard that is contained, explicitly or implicitly, in any of the statutory exemptions contained in FOIA. They rather reflect purposes and concerns unrelated to whether information is or is not "of the essence of the contract," whatever that may mean. Since the record contains no written opinion on this matter from the Justice Department, and indeed shows quite clearly that there was none, we

6. As noted above, the ALJ referred to the technical materials accompanying PRC's bid proposal as "included by reference" in the contract. There is support in the record for this assumption. What the ALJ did not find it either necessary or appropriate to do was to ascertain, as dispositive of the disclosure question, whether these materials were "of the essence of the contract" within the meaning of the Justice Department's suggested criterion. It is plain that he believed the basic undertakings of the contracting parties to each other were visible from the public file, but he did not regard that as relevant to the FOIA disclosure issue.

7. In the oral argument before us, appellant disclaimed any reliance on a contract right to prevent the Commission from making the contested material available to the public. Its contention was that, whether the material in issue be deemed part of the contract (or even of its "essence") or not, the material was stamped as

proprietary material; it was submitted to the Air Force as an aid to consideration of the bid proposal; the Government never paid anything for it and, indeed, cannot do so under the procurement regulations; the material was exempt under FOIA; and that the procurement regulations prevented the Government from making it public.

Counsel for the Commission in the course of his argument asserted that the Commission had never reached the question of the applicability of FOIA exemptions. Instead, so he said, the Commission had looked to the first criterion suggested by the Department of Justice, namely, "the essence of the contract," and decided that the material in question met that description. Accordingly, it had no occasion to consider the second criterion suggested by the Department of Justice, namely, did the material fall within Exemption 4?

are without the benefit of the rationale, if any, underlying the Department's telephonic musings on this score. We do know that the test did not figure in Judge Zwerdling's consideration and disposition of the issues raised by the Show Cause Order, even though that Order itself set out the Justice Department's criteria. He took FOIA itself as his guide, and looked first to the relevant statutory exception. Having found it applicable, he then dealt with the question of whether the Commission should nonetheless exercise its discretion in favor of disclosure. There is, at the least, a substantial question as to whether the Commission erred in not doing the same.[8]

If error there be, no one suggests that appellant has not been injured in fact thereby or lacks standing to complain thereof. As the appeal comes to us from the District Court, the sole question is as to the forum in which relief must be sought. The District Court's answer is that it can only be the Court of Claims because the dispute is essentially one as to the meaning of a government contract. That result cannot be sustained but, in fairness to the District Court, we think its perception of the matter was clouded by the Commission's insistence on treating the question before it in contract terms in response to the wire-borne oracular voice from the Justice Department.[9]

■ Appellant's amended complaint in this case listed four alleged bases of District Court jurisdiction. First, claiming an amount in controversy greater than $10,000, appellant invoked the District Court's general federal question jurisdiction under 28 U.S.C. § 1331 (1970).[10] Second, claiming an amount in controversy less than $10,000, appellant asserted jurisdiction under the Tucker Act, 28 U.S.C. § 1346(a)(2) (1970).[11] Third, appellant contended, rather obliquely, that the District Court could find juris-

8. In its brief in this court the Commission does not discuss the propriety of its use of the "essence of the contract" standard, perhaps because it was not called upon to do so by appellant's somewhat opaque brief. It merely assumes that standard was proper, and argues that the dispute is of a contractual nature over which the District Court lacked jurisdiction. Alternatively, the Commission argues that, if the District Court had jurisdiction at all, it was under the Administrative Procedure Act; and that the scope of review of its action is, accordingly, that provided by the APA.

9. In its memorandum opinion the District Court in terms regarded the controversy as one turning upon the question of whether Volume II is part of the contract. In any event, the court's conclusion was that it was presented with an issue of contract interpretation, which it deemed appropriate for resolution only by the Court of Claims, relying upon our decision in *International Eng. Co. v. Richardson*, 167 U.S.App.D.C. 396, 512 F.2d 573 (1975), *cert. denied*, 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636 (1976).

   *Richardson* was not, however, a FOIA case in any respect; it involved no request under FOIA by a third party for the technical data in question, nor did it implicate in any way the FOIA exemptions. It was, rather, a straight-out wrangle between an Air Force contractor and the Air Force over the reach of the latter's right to the possession of technical data developed by the contractor in the course of its performance of the contract; and the dispute turned entirely upon the resolution of a disputed interpretation of the "Rights in Technical Data" clause in the contract. This court held, not surprisingly in that context, that the lawsuit was one for the Court of Claims and not the District Court.

10. Appellant's complaint was originally filed in March, 1975. In October, 1976, when this appeal was under submission after oral argument, Congress revised § 1331 to eliminate the amount in controversy requirement in civil actions "brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." Pub.L.No.94–574, § 2, 90 Stat. 2721 (1976). We assume *arguendo* that, despite this subsequent legislative development, the District Court's federal question jurisdiction in this case must be measured according to the provisions of § 1331 as it stood when the complaint was filed. Appellant will suffer no adverse effect in any event. Given the obvious value and importance of the material whose disclosure appellant seeks to prevent, we have no doubt that the $10,000 requirement of prior law is easily satisfied in this case.

11. Apart from its introduction of a conflicting allegation concerning amount in controversy, appellant's reference to the Tucker Act was particularly unfortunate in that it contributed to the District Court's mistaken impression that, fundamentally, this litigation involved a contract cause of action.

diction under 18 U.S.C. § 1905 (1970).[12] Finally, appellant argued that § 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (1970), represented an implied grant of subject-matter jurisdiction to review agency action.[13]

■ We hold that appellant properly invoked the District Court's federal question jurisdiction under § 1331. In support of our result, we note that both leading scholarly commentaries on "reverse-FOIA" suits have regarded § 1331 as the most probable jurisdictional basis for such actions.[14] Also, the

Fourth Circuit has recently reached the same conclusion. See Westinghouse Elec. Corp. v. Schlesinger, 542 F.2d 1190, 1209–10 (4th Cir. 1976), cert. denied, —— U.S. ——, 97 S.Ct. 2199, 53 L.Ed.2d 239 (1977). We believe that, under the present circumstances, federal question jurisdiction may be sustained whether the action is viewed as "arising under" FOIA itself or whether it is conceived more broadly as the assertion of a private party's right "to be free from agency action which adversely affects him and is not authorized by federal law." [15]

12. The statute cited is a criminal provision which prohibits any officer or employee of the United States or of any department or agency thereof from disclosing, without proper authorization, confidential information and trade secrets coming to him in the course of his employment. Appellant apparently theorized that § 1905, standing alone, conferred upon the District Court jurisdiction to entertain a civil suit seeking to enjoin a violation of that statute. In Charles River Park, supra, this court declared its unwillingness to imply a private right of action from § 1905 "unnecessarily." See 171 U.S.App.D.C. at 292 n. 6, 519 F.2d at 941 n. 6. As explained more fully in the text, infra, we believe that appellant's claim is cognizable under the District Court's federal question jurisdiction. Therefore, like the Charles River Park panel, we express no opinion on whether § 1905 may constitute an independent basis of jurisdiction for at least some "reverse-FOIA" suits.

13. Section 10 of the APA has recently been amended by Congress. See Pub.L.No.94–574, § 1, 90 Stat. 2721 (1976). The earlier version, upon which appellant relied, was retained in its entirety, and new language was added to "remove the defense of sovereign immunity as a bar to judicial review of Federal administrative action otherwise subject to judicial review", and to "simplify technical complexities concerning the naming of the party defendant in actions challenging Federal administrative action . . .." H.R.Rep.No.94–1656, 94th Cong., 2d Sess. 1, reprinted in [1976] U.S.Code Cong. & Ad.News, pp. 6121, 6122. In pertinent part, Section 10 still provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

This court has previously construed the above language as an independent basis of jurisdiction permitting those situated like appellant to seek relief in the District Court. See, e.g., Charles River Park, supra, at 290, 519 F.2d at 939; and Pickus v. Board of Parole, 165

U.S.App.D.C. 284, 287–288, 507 F.2d 1107, 1110–11 (1974). Other circuits have issued contrary rulings. See, e.g., Bramblett v. Desobry, 490 F.2d 405, 407 (6th Cir.), cert. denied, 419 U.S. 872, 95 S.Ct. 133, 42 L.Ed.2d 111 (1974); and Zimmerman v. United States, 422 F.2d 326, 330–31 (3d Cir.). cert. denied, 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970). Commentators have even disagreed as to which is the majority view. Compare K. Davis, Administrative Law in the Seventies, § 23.02, at 530 (1976), with 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3568, at 465–66 (1975).

Shortly before this opinion was to appear, the Supreme Court resolved the matter. Extrapolating from Congress' decision to eliminate the amount in controversy requirement for federal question actions against the United States, its agencies or employees (see note 10 supra), the Court held that "the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977).

14. See Note, Protection from Government Disclosure—The Reverse-FOIA Suit, 1976 Duke L.J. 330, 347, 351 (observing that "no court has failed to find jurisdiction" on some ground, and opining that "[t]he most promising source of jurisdiction for a reverse-FOIA suit is the general federal question statute"); and Note, Reverse-Freedom of Information Act Suits: Confidential Information in Search of Protection, 70 Nw.U.L.Rev. 995, 1007 (1976) ("The uncertainty of the APA as an independent jurisdictional grant makes the statutory grant of 'federal question' jurisdiction . . . the most likely basis for jurisdiction in reverse-FOIA suits").

15. 1976 Duke L.J. at 352. Here, the Commission has never considered the applicability of Exemption 4 to the material characterized as "the essence of the contract." Thus, in all

The District Court in this instance, by treating appellant's complaint as raising a contractual issue cognizable only in the Court of Claims, has begged the very question that fairly leaps out of the administrative record, namely, in ordering the disclosure of material under FOIA because it is "of the essence of the contract," has the Commission employed a standard within the contemplation of Congress when it enacted FOIA? We do not address the merits of that question. On remand, it will be the function of the District Court to entertain, hear, and resolve the issue. If it should conclude that the Commission erred, the proper course would appear to be for it to remand the matter to the Commission for reconsideration by reference to the method of approach followed by the Administrative Law Judge.

The judgment of the District Court is reversed, and the case remanded for further proceedings consistent herewith. This court's order of July 11, 1975, enjoining the Commission from disclosing any of the information at issue in this case continues in effect pending further order of the court.

*It is so ordered.*

likelihood, this action, seeking to compel the Commission to apply the statutory standard may properly be said to arise under FOIA itself. Where, however, an agency has determined, as a matter of discretion, to release information concededly exempt from compulsory disclosure under FOIA, an injunction suit charging abuse of agency discretion probably could not be classified as "arising under" FOIA, since, as indicated earlier, the FOIA exemptions are permissive, not mandatory (*see* note 4 *supra*). Rather, a suit to block discretionary disclosure would raise a federal question simply by virtue of the fact that the action would be brought against a *federal* agency for the purpose of challenging *federal* administrative action allegedly not authorized by law. *See* 5 U.S.C. § 706(2)(A) (1970).