**MARTIN MARIETTA CORPORATION,
Plaintiff,**

v.

**FEDERAL TRADE COMMISSION et
al., Defendants.**

**Civ. A. No. 79–0162.**

United States District Court,
District of Columbia.

July 13, 1979.

Gerald M. Stern and H. Bartow Farr, III,
Washington, D. C., for plaintiff.

Lillian A. McEwen, Asst. U. S. Atty.,
Washington, D. C., for defendant.

Kenneth R. Reed and Mark D. Freitag,
Phoenix, Ariz., admitted pro hac vice, for
defendant-intervenor.

## MEMORANDUM

GASCH, District Judge.

Plaintiff Martin Marietta Corporation
("Martin Marietta") has brought suit to en-
join the Federal Trade Commission ("FTC"

or "the Commission"), the individual Commissioners, and the Secretary of the Commission from releasing to the Attorney General of the State of Arizona the transcript of a deposition given by an officer of Martin Marietta during the Commission's investigation of the Portland cement industry. Martin Marietta maintains that the deposition contains trade secrets and confidential commercial and financial information that are exempt from disclosure under applicable statutes. The State of Arizona has intervened as a party defendant and the matter is presently before the Court on the parties' cross-motions for summary judgment. After considering the arguments of counsel, the Court concludes that the FTC acted within its statutory discretion in ordering release of the deposition and grants defendants' and defendant-intervenor's motions for summary judgment.

*FACTUAL BACKGROUND*

The FTC is a federal administrative agency created by the Federal Trade Commission Act ("the Act"), 15 U.S.C. §§ 41 *et seq.* (1976). It is authorized and directed by section 5 of the Act to prohibit unfair methods of competition and unfair or deceptive acts or practices.[1] To achieve this goal it is empowered to gather and compile information concerning, and to investigate, the organization, business, conduct, practices, and management of corporations in or affecting commerce, to make public such portions of the information obtained as it deems expedient in the public interest, and to make reports and recommendations for legislation to Congress.[2]

Under this statutory mandate, the FTC initiated a non-public investigation of the cement industry, for which use of compulsory process has been authorized. *See* In the Investigation of the Portland Cement Industry, File No. 77–10010. On May 8, 1978, the Commission issued a subpoena *ad testificandum* to Mr. Dale Mitchell, the President of Martin Marietta Cement, Western Division, to appear and testify at a deposition on May 31, 1978. On May 22, 1978, Martin Marietta moved to quash the subpoena because of its concern that the Commission subsequently might disclose transcripts, notes, or memoranda relating to the deposition to adverse parties.[3] The Commission on May 23, 1978, denied Martin Marietta's motion to quash the subpoena, but advised the corporation that it "may apply for assurances of confidential treatment consistent with the language and purposes of the Freedom of Information Act for genuinely sensitive information actually revealed during the investigative hearing."[4]

On May 31, 1978, Mr. Mitchell's deposition was taken pursuant to the subpoena *ad testificandum.* The testimony he gave included information concerning plant locations, the types of cement sold by Martin Marietta, estimates of plant life, percentages of cement sold to various customers, storage capacity of plants, plant production, cement shipments, percentage of markets, freight absorption, and profitability computations.[5]

By letter dated August 21, 1978, Kenneth R. Reed, Chief Counsel of the Antitrust Section of the Office of the Arizona Attorney General, made a request for copies of the transcripts of any depositions taken during the Commission's cement industry rulemaking investigations. On October 4, 1978, Mr. Reed amended his request to exclude any customer names that might appear in the transcripts. Both requests specified that they were made under the Freedom of Information Act. The transcript of

---

1. 15 U.S.C. § 45 (1976).

2. *Id.* § 46.

3. *See* Complaint, Exh. B.

4. *Id.,* Exh. C.

5. *See* Affidavit of Ana L. Colon, Exh. 10 to Defendants' Memorandum in Support of Motion for Summary Judgment. Although the

Mitchell transcript has not been submitted for an *in camera* inspection, the Colon affidavit identifies the general information contained on each page of the transcript. The affidavit of Vernon L. Everngam in support of plaintiff's motion for summary judgment contains a further description of the information provided during the deposition.

the deposition of Mr. Mitchell came within the scope of these requests.

The Arizona Attorney General sought this material for use in two antitrust suits: a federal suit in which Martin Marietta is named a codefendant, *In Re Cement and Concrete Antitrust Litigation*, No. Civ. 76–488A PHX CAM (D.Ariz.), and a state anti-trust suit, *Arizona ex rel. Babbitt v. Port-land Cement Ass'n*, No. 0339216. The fed-eral suit is a class action under the Clayton and Sherman Acts involving twenty-five plaintiffs including the states of Arizona, Colorado, Oregon, and private litigants, all of whom are purchasers of cement. Mr. Reed represents the interests of all state and local governmental entities in Arizona that purchased cement from defendants and is also serving as plaintiffs' liaison counsel. The other action is brought in state court pursuant to the Uniform State Antitrust Act,[6] which provides that the state attorney general may bring an action in the name of the state for injunctive relief and civil penalties for violation of state antitrust laws. Martin Marietta is not presently a defendant in the state ac-tion.

Following receipt of Mr. Reed's request, the FTC solicited Martin Marietta's com-ments on and objections to release of the transcript of Mr. Mitchell's deposition. In response, Martin Marietta made two sub-missions [7] in which it alleged that the depo-sition was exempt from disclosure under 5 U.S.C. §§ 552(b)(4), (7) (1976). On Novem-ber 13, 1978, the Acting General Counsel of the FTC informed Martin Marietta and the Arizona Attorney General of his decision to release the deposition. He further stated that actual release of the document would not be made for ten days. The decision to release was made pursuant to the discre-tionary authority of the Commission, con-ferred by section 6(f) of the Federal Trade

Commission Act,[8] and in furtherance of the Commission's policy, expressed in section 4.6 of its Rules of Practice, of cooperation with other government agencies in law enforce-ment efforts. No mention was made of the Freedom of Information Act as a basis for the release.

On November 20, 1978, attorneys for Martin Marietta met with Commission staff to object to the release of the transcript without excision of confidential information and trade secrets. The staff agreed to postpone release of the information until December 8, 1978, and requested a memo-randum detailing Martin Marietta's objec-tions. Martin Marietta complied on No-vember 29, 1978 and argued that the Com-mission policy of cooperation with govern-mental entities did not cover the request by the Arizona Attorney General, who was act-ing in a private capacity as a purchaser of cement in the federal lawsuit. Martin Mar-ietta also contended that the Commission was required to consider the FOIA and the various FOIA exemptions before releasing the transcript.

Subsequently, the Commission's Deputy General Counsel agreed to defer release of the depositions in order to provide the Ari-zona Attorney General with an opportunity to respond to Martin Marietta's arguments. The attorney general did so and Martin Marietta filed a reply. On January 10, 1979, the Commission notified Martin Mar-ietta of its decision to release the transcript in five working days from the date of the letter.[9] The Commission decided to grant discretionary release of the transcript on the ground that both the federal and state court actions "were brought pursuant to the authority conferred on the Attorney Gener-al [of Arizona] by the State of Arizona to conduct investigations and bring actions on the State's behalf for the enforcement of

---

6. Ariz.Rev.Stat.Ann. §§ 44–1401 to 44–1413 (Supp.1978–79).

7. *See* Exhs. 3–4 to Defendants' Memorandum in Support of Motion for Summary Judgment.

8. 15 U.S.C. § 46(f) (1976). This section autho-rizes the Commission "[t]o make public from

time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expe-dient in the public interest . . . ." *Id.*

9. Complaint, Exh. I.

state or federal antitrust laws." The Commission therefore reasoned that the Attorney General was acting in the public interest regardless of whether his capacity be characterized as governmental or proprietary and concluded that application of Rule 4.6 was appropriate.[10]

The proposed release was conditioned on the following requirement of confidentiality: "The information is being released to you for purposes of the antitrust litigation currently being handled by your office and with the understanding that you will preserve its confidentiality, and in particular, that it will not be disclosed to any person other than employees of your office." The letter announcing release of the information also stated that if the requested materials became the subject of discovery requests in the litigation, all parties would have a "full opportunity to argue for confidential treatment, pursuant to a protective order entered in that litigation or otherwise, of any material whose disclosure might result in competitive injury."[11]

On January 16, 1979 plaintiff filed this lawsuit, seeking a temporary restraining order and a preliminary injunction to prevent the Commission from releasing the transcript. Before the matter came on for a hearing, the parties stipulated that the transcript would not be released until a judgment on the merits of this lawsuit or October 1, 1979, whichever occurred first, and that plaintiff would withdraw its motions for a temporary restraining order and a preliminary injunction.[12]

## MERITS

In its complaint Martin Marietta seeks a declaratory judgment that the Mitchell deposition is exempt from disclosure under the Freedom of Information Act ("FOIA") because it contains confidential business information and information specifically exempted from disclosure by statute. 5 U.S.C. § 552(b)(3), (4) (1976).[13] Subsequent to oral argument of the cross-motions for summary judgment in this case, the Supreme Court issued its decision in *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).[14] In *Chrysler* the Supreme Court reaffirmed the principle that the basic objective of the FOIA is disclosure. 99 S.Ct. at 1712. By providing limited exemptions in the FOIA from disclosure, the Court concluded Congress was concerned with the agency's need for confidentiality. *Id.* at 1713. The Court further found that agencies have discretion to disclose information that comes within the Act's exemptions and is precluded from mandatory disclosure. *Id.* The FOIA does not provide suppliers of information, such as business corporations, with a private right of action to enjoin an agency's decision to release the information. *Id.* at 1714.

The Supreme Court also refused to find a private right of action to prevent disclosure of information maintained by the government under the Trade Secrets Act, 18 U.S.C. § 1905 (1976). *Id.* at 1725–1726. The Court did conclude, however, that judicial review of an agency's decision to release information is available to the supplier of that information as a person "adversely affected or aggrieved" by agency action under section 10 of the Administrative Procedure Act.[15] *Id.* at 1726–1727. The agency action would be subject to review to determine whether disclosure of the information would be an abuse of the agency's discretion. *See* 5 U.S.C. §§ 701–06 (1976).

The United States Court of Appeals for this Circuit had previously recognized that if the information sought falls within the specific prohibitions of section 1905, it would be an abuse of discretion for an

10. *Id.*

11. *Id.,* Exh. E.

12. Stipulated Order of January 18, 1979.

13. The statutes relied on by plaintiff in support of this exemption are 15 U.S.C. § 46(f) and 18 U.S.C. § 1905.

14. The parties submitted supplemental memorandum discussing the impact of the *Chrysler* decision.

15. 5 U.S.C. § 702 (1976).

agency to release the information. *Charles River Park "A," Inc. v. HUD,* 171 U.S.App. D.C. 286, 293, 519 F.2d 935, 942 (1975). The Trade Secrets Act provides:

> Whoever, being an officer or employee of the United States or of any department or agency thereof, publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information . . . [which] concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association . . . shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.

18 U.S.C. § 1905 (1976). Because this prohibition applies only to disclosures "not authorized by law," the FTC argues that section 1905 is not applicable to the challenged disclosure on the ground that release of the Mitchell transcript is authorized by section 6(f) of the Federal Trade Commission Act, 15 U.S.C. § 46(f) (1976).

Section 6(f) provides that the Commission shall have power

> [t]o make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.

15 U.S.C. § 46(f) (1976). Because the FTC has indicated that names of customers will be deleted from the Mitchell transcript before its release,[16] the question becomes whether the transcript contains trade se-

crets precluded from disclosure under section 6(f). If the transcript contains trade secrets, its release would violate section 6(f) and the provisions of the Trade Secrets Act. If the transcript did not contain trade secrets, its release would be permitted by section 6(f) and section 1905 would not be violated because the release was "authorized by law."

In order to prevent defendants from releasing the Mitchell transcript, Martin Marietta must establish that it contains trade secrets or alternatively, that its disclosure to the Arizona Attorney General constitutes making the information public. Neither the Federal Trade Commission Act nor agency regulations define "trade secret." One court, in construing section 6(f), has adopted the definition of a trade secret contained in the *Restatement of Torts. Ashland Oil, Inc. v. FTC,* 409 F.Supp. 297, 303 (D.D.C.), *aff'd,* 179 U.S.App.D.C. 22, 548 F.2d 977 (1976). That definition states:

> A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which give him an opportunity to obtain an advantage over competitors, who do not know or use it . . . .

4 Restatement of Torts § 757, at 5 (1939). The *Restatement* also details a number of factors that may be employed by a court in determining whether particular data rises to the level of a trade secret:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

4 Restatement of Torts § 757, Comment b, at 6 (1939).

---

16. *See* Exh. 5 to Defendants' Memorandum in Support of Motion for Summary Judgment. The amended request of the Arizona Attorney General specifically excluded customer names from the scope of the request.

In *Ashland* the district court, applying this definition, found that an oil company's reserve estimates for natural gas leases and contracts on federal lands constituted a trade secret of great competitive value. 409 F.Supp. at 303. The court refused, however, to enjoin the FTC under section 6(f) from releasing the information to a House subcommittee investigating a natural gas shortage because there was no showing that the information would be made public if it were turned over to the Congress and section 6(f) only prohibits public disclosure of trade secrets. *Id.* at 308. On appeal all parties conceded that the information was a trade secret of great competitive value to Ashland. 548 F.2d at 979.[17]

■ The legislative history of the Federal Trade Commission Act does not clarify what Congress intended to fall within the definition of a trade secret. It appears to the Court, however, that the production, shipment, pricing, customer, and marketing data contained in the Mitchell transcript do not constitute trade secrets within the meaning of section 6(f) of the Federal Trade Commission Act. In an affidavit in support of plaintiff's motion for summary judgment, the Vice President for Marketing of Martin Marietta Cement stated that the transcript contained confidential and sensitive information, which was closely guarded and not readily available to the public.[18] If these factors alone were sufficient to constitute "trade secrets," the term would be indistinguishable from confidential business and financial information. The language employed by a number of statutes suggests otherwise.[19] If confidential business information constituted trade secrets, it would not be necessary to refer specifically to customer names in section 6(f) because they would also represent such information.

The *Restatement* suggests that a "compilation of information which is used in one's business, and which give[s] him an opportunity to obtain an advantage over competitors, who do not know or use it" may constitute a trade secret. 4 Restatement of Torts § 757. It was on this basis that the reserve estimates in *Ashland* and the projected mine yields in *Exxon* were found to be trade secrets.[20] But no comparable information has been identified here. Defendants have indicated that pricing and production information is available from a number of other sources.[21] During his deposition Mr. Mitchell refused to answer certain questions concerning information that he considered competitively sensitive.[22] Applying the *Restatement* comments to these facts suggests that the information given in the deposition did not rise to the level of a trade secret. The definition of trade secrets employed by the FTC here is consistent with that used by the agency in other cases involving section 6(f).[23] Finally, other courts have refused to accept the expansive definition of trade secrets urged by plaintiff.[24]

**17.** *See also Exxon Corp. v. FTC,* 589 F.2d 582, 586 (D.C. Cir. 1978) (data concerning projected yield of individual uranium mines trade secret).

**18.** Affidavit of Vernon L. Everngam in Support of Plaintiff's Motion for Summary Judgment at 4–7.

**19.** *See, e. g.,* 5 U.S.C. § 552(b)(4) (FOIA exemption for "trade secrets and commercial or financial information obtained from a person and privileged or confidential"); 18 U.S.C. § 1905 (Trade Secrets Act prevents disclosure of "trade secrets, processes, operations, style of work, or apparatus, or . . . the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association").

**20.** *Ashland Oil, Inc. v. FTC,* 409 F.Supp. at 303; *Exxon Corp. v. FTC,* 589 F.2d at 586.

**21.** Exhs. 7, 9 to Defendants' Memorandum in Support of Motion for Summary Judgment; State of Arizona's Motion for Summary Judgment, at 16–24.

**22.** Affidavit of Ana L. Colon, Exh. 10 to Defendants' Memorandum in Support of Motion for Summary Judgment.

**23.** *See* Exh. 11 to *id.*

**24.** *E. g., Norwegian Nitrogen Prods. Co. v. United States Tariff Comm'n,* 55 U.S.App.D.C. 366, 6 F.2d 491, 495 (1925) (costs of production not trade secrets), *vacated as moot,* 274 U.S. 106, 47 S.Ct. 499, 71 L.Ed. 949 (1927); *Central*

Because the information contained in the Mitchell deposition does not represent trade secrets, it is within the statutory authority of the FTC to release this information "as it shall deem expedient in the public interest." 15 U.S.C. § 46(f). This language indicates that the Commission has broad discretion in making the decision to release information. Here the Commission has determined that its expressed policy of cooperation with other governmental agencies [25] supports release of the deposition to the Arizona Attorney General.[26]

■ There is no dispute that the State of Arizona could depose Mr. Mitchell as part of its state proceeding. The public interest in expeditious resolution of judicial proceedings would clearly not be served by requiring duplicative discovery efforts. *See United States v. American Tel. & Tel. Co.*, 461 F.Supp. 1314, 1341–42 (D.D.C.1978), *writ of mandamus denied sub nom. In re American Tel. & Tel. Co.*, No. 78–2050 (D.C. Cir. Oct. 1, 1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). Because release of the Mitchell transcript would avoid duplicative and unnecessary discovery, the FTC's decision to release it to the Arizona Attorney General did not constitute an abuse of the broad discretion conferred upon the agency by section 6(f).[27] Consequently, any cause of action plaintiff might raise under the Administrative Procedure Act must fail.

■ It is therefore unnecessary to consider whether the Mitchell transcript contains material prohibited from disclosure by the Trade Secrets Act because section 6(f) of the Federal Trade Commission Act provides the authorization of law that pre-cludes application of section 1905. Because of the Court's determination that the Mitchell transcript does not contain trade secrets, it is unnecessary to reach defendants' and defendant-intervenor's alternative argument that providing the transcript to a state attorney general is not making the document public under section 6(f).[28]

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is denied and defendants' and defendant-intervenor's motions for summary judgment are granted.

---

Specialties Co. v. Schaefer, 318 F.Supp. 855, 859 (N.D.Ill.1970) (information concerning suppliers' capacities, pricing policies, and names and requirements of customers not trade secrets); *Cudahy Co. v. American Labs., Inc.*, 313 F.Supp. 1339, 1343–45 (D.Neb.1970) (data on profits and costs, names of persons known to be customers in industry, and production techniques employing generally available technology not trade secrets).

25. *See* Procedures and Rules of Practice for the Federal Trade Commission, 16 C.F.R. § 4.6 (1978). The rule states: "It is the policy of the Commission to cooperate with other govern-mental agencies to avoid unnecessary overlapping or duplication of regulatory functions."

26. Complaint, Exh. I.

27. Without deciding the question, it is also presumably within the agency's discretion to place such conditions upon the release of the transcript as it deems proper, i. e., the requirement of confidentiality imposed here.

28. *But see Interco, Inc. v. FTC*, Civil Action No. 78–2486 (D.D.C. April 11, 1979), *stay entered*, No. 79–1423 (D.C. Cir. May 17, 1979).