**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**ABBOTT LABORATORIES, a corporation, Defendant-Appellant.**

No. 78–2254.

United States Court of Appeals,
Seventh Circuit.

Argued June 12, 1979.

Decided July 5, 1979.

Richard S. Rhodes, Chicago, Ill., for defendant-appellant.

Harland F. Leathers, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before PELL, SPRECHER and WOOD, Circuit Judges.

SPRECHER, Circuit Judge.

The issue raised by this case is solely whether it is controlled by this circuit's prior decision in *Eli Lilly & Co. v. Staats*, 574 F.2d 904 (7th Cir. 1978). We reject the appellant's contention that *Lilly* is distinguishable and affirm the district court.

In 1973 defendant Abbott Laboratories entered into four contracts to supply pharmaceutical products to the government. The contracts, pursuant to procurement statutes, contained the following access-to-records provision:

(b) This Contractor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of 3 years after final payment under this contract or such lesser time specified in either Appendix M of the Armed Services Procurement Regulations or the Federal Procurement Regulations Part 1–20, as appropriate, have access to and the right to examine any directly pertinent books, documents, papers, and records of the Contractor involving transactions related to this contract.

(c) The Contractor further agrees to include in all his subcontracts hereinunder a provision to the effect that the subcontractor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of 3 years after final payment under the subcontract or such lesser time specified in either Appendix M of the Armed Services Procurement Regulations Part 1–20, as appropriate, have access to and the right to examine any directly pertinent books, documents, papers, and records of such subcontractor involving transactions related to the subcontract.

*See* 10 U.S.C. § 2313(b) and 41 U.S.C. § 254(c).

In reliance on these provisions the Comptroller General made a formal demand, by a letter dated August 26, 1974, for access to

. . . all books, documents, papers, and other records directly pertinent to the contracts, which include, but are not limited to (1) records of experienced costs including costs of direct materials, direct labor, overhead, and other pertinent corporate costs, (2) support for prices charged to the Government, and (3) such other information as may be necessary for us to review the reasonableness of the contract prices and the adequacy of the protection afforded the Government's interests.

The demand was repeated by letter dated March 7, 1975, requesting access to

—Records relating to those costs assigned by the firm to the products purchased under the cited contracts. Discussions with your representatives have indicated that such assigned costs are limited essentially to direct manufacturing costs.

—Records relating to those costs which although they are incurred during the course of the firm's activities relating to the supply of ethical pharmaceuticals (including those purchased under cited contracts), are not assigned by the firm to individual products. Such costs would include those incurred for activities such as research and development, marketing and promotion, distribution and administration.

—Records relating to the methodology, and decisions involved in the firm's establishment of prices for the products purchased under the cited contracts.

Abbott refused these demands, and, as a result, the Comptroller General brought suit in district court to establish the right of the Government to gain access to the requested materials. The district court granted summary judgment on behalf of the government, concluding that this case was "identical" with the facts confronted by our opinion in *Eli Lilly & Co. v. Staats*, 574 F.2d 904 (7th Cir. 1978).

Indeed, these cases are identical. The contracts contained identical access-to-records provisions. *See* 574 F.2d at 906–07. The initial demand for information by the Comptroller General was phrased in exactly the same words as in this case, *id.* at 906, and was approved by this court in *Lilly* as consistent with the statutory and contractual provisions. *Id.* at 912–14. Specifically, we construed the language "directly pertinent . . . to the contract" to permit government access to information that "is a significant input in the cost of the product purchased in the contract." *Id.* at 914–15. In so doing, we rejected contentions that this language limited the government's inquiry to only those items specifically assigned by the company as costs of the contract or to information relating to possible improprieties in the negotiating process. Thus, the government's demands for information relating to costs of research and development, marketing, promotion, distribution and administration were held to be proper.[1]

Abbott Laboratories urges in this case that *Lilly* is distinguishable. The alleged distinction is that whereas in *Lilly* the district court made a factual finding that the government had two purposes in seeking information—*viz.,* determining the full cost of producing the contract items and, second, performing a study of the operations of the pharmaceutical industry—the record in this case demonstrates that the government has only the latter, allegedly impermissible, purpose with regard to its inquiries directed to Abbott. We think that this distinction misconstrues the record before us. In the Comptroller General's initial letter of demand, the Comptroller General stated that he was seeking the requested information in order to conduct "a review of the procurement of drugs by agencies of the federal government, including the pricing of drugs and pharmaceuticals procured under negotiated contracts." This certainly would permit us to find that the government had

the purpose that the defendant urges is missing from this record. The defendant attempts to avoid such a finding by citing a portion of a proposed order submitted by the government with its renewed motion for summary judgment. In that order the government proposed that the district court protect the defendant's interests in the confidentiality of cost information through the following restriction: "Any document . . . shall be used . . . solely for the purpose of a study of the operations of the pharmaceutical industry. . . ." The defendant construes this proposal as an abandonment of the government's purpose mentioned in the initial letter of demand. However, since a study of costs involved in negotiated contracts would also properly be a part of any study of the operations of the industry, we do not see this language as in any way narrowing the dual purpose demonstrated in this record and in the record reviewed in *Lilly.*

Defendant forwards a further issue that it claims was not considered in *Lilly* and would mandate a different result in this case. Specifically, the defendant urges that we should decline to allow access to Abbott's records since such an examination "will result in substantial injury to Abbott . . . while yielding little, if any, benefit to the Comptroller General." This balancing of equities, however, was performed by Congress when it granted inspection authority to the Comptroller General (*see* 10 U.S.C. § 2313(b) and 41 U.S.C. § 254(c)), and it is not for this court to restrike the balance.

AFFIRMED.

PELL, Circuit Judge, concurring.

As the matter appeared to me in *Eli Lilly & Co. v. Staats,*[1] it does here, that an officer of the United States government, without the necessary Congressional authorization, is attempting to delve into private business records under the public interest cloak of a

---

1. These items constituted a "significant input" in the cost of pharmaceutical products because the actual costs of manufacture, the only costs specifically assigned to products by the drug companies, was often as little as 9 percent of the products' sale price. 574 F.2d at 913.

1. 574 F.2d 904 (7th Cir. 1978), *cert. denied,* 99 S.Ct. 362.

belief that profits are too high in the pharmaceutical drug business. That belief may or may not be true in fact but as of this time I am unable to find that the Congress has authorized such a wide-ranging exploratory gambit.

In the case before us, Abbott had contracts for four specific products which were standard commercial items for which there existed regularly published catalog prices. The products were primarily sold by Abbott commercially. Sales of these products to the government approximated only 0.35% of the total consolidated sales of these products at the time of the subject contracts. In each contract, the solicited proposal submitted by Abbott was the lowest or sole offer, and, in each case, Abbott's proposed price was lower than its published catalog price. In each case, Abbott's price was considered reasonable by the procurement agency. Data respecting the cost of the products sold or the manner in which the prices were established was not sought during the procurement process, apparently in view of statutory relief from furnishing such data where the contractor supplies commercial items sold to the general public at prices based on established catalog prices. 10 U.S.C. § 2306(f)(4); 41 C.F.R. § 1–3.807–3(a), (b).

While Abbott did agree in its contracts to an examination of some of its records, that agreement was confined to records "that directly pertain to, and involve transactions relating to, the contract or subcontract." The Comptroller General, giving what I regard as a fair reading to his demands, goes far beyond "directly pertinent books, documents, papers, and records." In sum, it appears to me that the government is attempting to gather data for its general study of the drug industry through a coercive power of access to records granted it by statutes enacted for the limited purpose of reviewing the negotiation and performance of certain government contracts.

That records of private businesses are not subject to limitless governmental foraging is reflected in the recent Supreme Court decision of *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 324, n.22, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In that case, the statute authorized warrantless OSHA inspections but did not expressly include any records, merely providing that the employer was to "make available" his pertinent records. The regulations of the Secretary of Labor provided for broad powers of inspection. The Court rejected the position of the Secretary that an inspection of documents of this scope may be effected without a warrant.

In my opinion, the Comptroller General has not demonstrated a basis for a claim of right to pry without any real limitation into the records of the private business here involved.

Nevertheless, having said this, I am confronted with the *Lilly* case, which I believe is essentially undistinguishable. The majority of the panel in *Lilly* ruled that the Comptroller General was acting within the law and not by subterfuge. On the petition for rehearing only two active judges of this court would have reheard the case *en banc.* The Supreme Court denied *certiorari.* Under these circumstances, I have no choice but to follow the law, which in my opinion, if this had been an *a priori* matter, the Comptroller General was not doing. I therefore, albeit unhappily, concur in the foregoing opinion by Judge Sprecher.

HARLINGTON WOOD, Jr., Circuit Judge, concurring.

I concur only because I am bound by this court's prior decision in *Lilly*, in which I did not participate.