**JAYMAR-RUBY, INC.,**
**Plaintiff-Appellant,**

**v.**

**FEDERAL TRADE COMMISSION, et al., Defendants-Appellees.**

**No. 80–2369.**

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 23, 1981.

Decided June 17, 1981.

Jeffrey I. Gordon, Mayer, Brown & Platt, Washington, D. C., Charles L. Stewart, Hart, Schaffner & Marx, Chicago, Ill., for plaintiff-appellant.

Edward F. Glynn Jr., F. T. C., Washington, D. C., Patrick J. Quinlan, Providence, R. I., for defendants-appellees.

Before SWYGERT, Circuit Judge, KUNZIG,* Judge, and BAUER, Circuit Judge.

KUNZIG, Judge.

The issue here is one of first impression before this court: whether the FTC's decision under the Federal Trade Commission Improvements Act of 1980 to disclose its investigative files to state attorneys general is judicially reviewable. We hold that such decisions are not reviewable, provided that the two statutory prerequisites of (1) confidentiality and (2) official law enforcement purpose are satisfied. We rest principally on the "committed to agency discretion" exception of the Administrative Procedure Act, 5 U.S.C. § 701(a)(2) (1976).[1]

* The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation.

1. 5 U.S.C. § 701 provides as follows:
   (a) This chapter [Judicial Review] applies, according to the provisions thereof, except to the extent that—
   (1) statutes preclude judicial review; or
   (2) agency action is committed to agency discretion by law.

2. Section 6(f) of the FTC Act, as then relevant, provided:
   The Commission shall also have power ...

Before relating the facts of this case, we shall briefly describe the statutory mandate underlying the FTC's authority to disclose information obtained in the course of an investigation.

## I.  BACKGROUND

A. *Statutory Background.* Section 5(a)(1) of the Federal Trade Commission Act (FTC Act) declares unlawful any "unfair method of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a) (1976). In carrying out this broad declaration, the Federal Trade Commission (FTC or Commission) is empowered to "gather and compile information concerning, and to investigate from time to time the organization, business, conduct, practices, and management of any person, partnership, or corporation engaged in or whose business affects commerce." 15 U.S.C. § 46(a) (1976). Prior to the enactment of the Federal Trade Commission Improvements Act of 1980 (Improvements Act), Pub.L. No. 96–252, 94 Stat. 374 (1980), the Commission was authorized under § 6(f) of the FTC Act, 15 U.S.C. § 46(f) (1976), to disclose publicly this information, except trade secrets and names of customers, as it deemed expedient in the public interest.[2]

The Commission interpreted its authority under this law to permit disclosure of investigative files to state attorneys general conducting similar investigations. Although § 6(f) did not explicitly authorize such disclosure, the Commission's view was upheld in *Interco Inc. v. FTC*, 478 F.Supp. 103

(f) to make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest, and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation, and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use.
15 U.S.C. § 46(f) (1976).

(D.D.C.1979), *appeal dismissed*, No. 79–1423 (D.C. Cir. 1980) and *Martin Marietta Corp. v. FTC*, 475 F.Supp. 338 (D.D.C.1979), *affirmed as modified*, No. 79–1783 (D.C. Cir. 1980).

In May 1980, Congress enacted the Improvements Act which, among other things, amended § 6(f). The amended § 6(f) authorizes the Commission to share any privileged information with any Federal or State law enforcement agency, provided that the agency certifies that the information will remain confidential and be used only for official law enforcement purposes.[3]

The language of amended § 6(f) explicitly demonstrates Congress' intent to adopt and codify the view which the Commission and courts had held of the Commission's authority under the old law. Moreover, as Congressman Preyer, one of the principal architects of the Improvements Act stated:

> The purpose of these provisions is to make it crystal clear that the Commission has this authority and that it should be able to exercise it without undue delay and restraint.... By clarifying the law, we hope to put an end to litigation ... which needlessly delays and hampers the ability of our state attorneys general to protect the citizens of their States.

126 Cong.Rec.H.3870 (daily ed. May 20, 1980). Congress was clearly attempting to remove any doubt as to the FTC's authority to share the fruits of its investigations with state officials similarly concerned.[4]

B. *Factual Background.* In this action, plaintiff, Jaymar-Ruby, Inc. ("Jaymar")[5] seeks to prevent the Commission from sharing its investigative files with some nineteen state attorneys general.[6] The relevant facts are not in controversy.

On April 28, 1978, the Commission formally undertook to determine whether certain clothing companies were engaged in illegal activities under the FTC Act.[7] Jaymar, a men's sportswear manufacturer and distributor,[8] was one such company under

3. Section 6(f), as amended, now provides:
The Commission shall also have power ... (f) To make public from time to time such portions of the information obtained by it hereunder as are in the public interest; and to make annual and special reports to the Congress and to submit therewith recommendations for additional legislation; and to provide for the publication of its reports and decisions in such form and manner as may be best adapted for public information and use: *Provided,* That the Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential, except that the Commission may disclose such information to officers and employees of appropriate Federal law enforcement agencies or to any officer or employee of any State law enforcement agency upon the prior certification of an officer of any such Federal or State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.
15 U.S.C.A. § 46(f) (Sept. 1980 Supp. West).

4. Enacted with the amendment to § 6(f), § 14 of the Improvements Act added a new § 21 to the FTC Act to eliminate the possibility that highly sensitive information and materials obtained by the Commission could be released under the Freedom of Information Act (FOIA). It provides:

"(f) Any material which is received by the Commission in any investigation, a purpose of which is to determine whether any person may have violated any provision of the laws administered by the Commission, and which is provided pursuant to any compulsory process under sections 41 to 46 and 47 to 58 of this title or which is provided voluntarily in place of such compulsory process shall be exempt from disclosure under section 552 of Title 5 [FOIA]."
15 U.S.C. § 57b–2(f) (Sept. 1980 Supp. West).

5. Jaymar is an Indiana Corporation with its principal place of business in Michigan City, Indiana.

6. Of the nineteen state attorneys general who requested the Commission's investigative files, seventeen intervened in this litigation. The states they represent are as follows: California, Connecticut, Delaware, Iowa, Louisiana, Maine, Maryland, Massachusetts, New Hampshire, New Mexico, North Carolina, Pennsylvania, Rhode Island, Tennessee, Vermont, Virginia and West Virginia. *See* 28 U.S.C. § 2403 (1976). The two nonintervening states are Illinois and New Jersey.

7. *See* n.2 at 507, and accompanying text.

8. In addition to Jaymar's nationwide business as a retail distributor, it licenses its trademarks to foreign manufacturers of men's clothing, and

investigation. On June 13, 1978, the San Francisco Regional Office of the Commission issued a subpoena *duces tecum* ordering Jaymar to produce documents relating to its marketing, distribution and pricing practices. Pursuant to that subpoena, Jaymar provided the Commission with voluminous materials in August, November and December, 1978. These materials consisted of internal memoranda and correspondence, sales and financial data, Jaymar's sales manual, model books, order books, order forms, advertising service brochures and fashion portfolios.

The investigation of Jaymar resulted in the issuance of a Commission Complaint and the entry of a cease and desist Consent Order. The Order, dated November 9, 1979, prohibited Jaymar from "fixing, establishing, controlling or maintaining, directly or indirectly, the resale price at which any dealer may advertise, promote, offer for sale or sell any products of the sale period of any dealer." Jaymar was further enjoined from pursuing enforcement of such prices through surveillance of retailers, coercion, threatened withholding of advertising allowances or terminating dealer relationships. Upon entry of the Consent Or-

der, the Commission ended its investigation of Jaymar.[9]

Beginning in September 1979, the Commission received requests from various state attorneys general pursuant to § 6(f) of the FTC Act.[10] *See also* 6 C.F.R. §§ 4.6, 4.11(b)(2) (Commission policy of cooperation with state law enforcement officials). The state attorneys general sought access to the Commission's investigative file to determine if Jaymar had violated various state antitrust laws or state deceptive trade practices acts.[11]

Following nearly fourteen months of discussion, correspondence and negotiation between Jaymar, the Commission, and the state attorneys general concerning the measures to be taken to insure the protection of materials alleged by Jaymar to be confidential, the Commission, by a letter dated April 14, 1980, notified Jaymar that "release of the Jaymar-Ruby files to these requesters * * * will not jeopardize the commercial sensitivity and value of the materials to the company, since no public disclosure or commercial use of the documents is contemplated." [12] This letter constituted final agency action. Ten days later, Jaymar instituted suit in the United States District Court for the Northern District of

---

sells and licenses its manufacturing and marketing skills subject to confidential disclosure agreements, to such foreign businesses.

**9.** Note that the Consent Order was not an admission by Jaymar that it violated any law but merely constituted a settlement agreement.

**10.** Jaymar has contended throughout these proceedings that the unamended, rather than the amended version of § 6(f) should govern this case. Jaymar reasons that it submitted its files *prior* to the effective date of the amended § 6(f), and that the state attorneys general also submitted their requests prior to that date. However, since disclosure by the FTC to state attorneys general is to take place *after* the effective date of § 6(f), as amended, we agree with Judge Sharp that the amended version of § 6(f) governs in this case. We therefore find it unnecessary to reach the question of retroactivity. In any event, even if we were to hold that amended § 6(f) does not govern this case, Jaymar's argument would still fail because the scope of disclosure permitted by the old law cannot be deemed to be less expansive than that permitted by the new. As indicated beforehand, one of Congress' purposes in amend-

ing § 6(f) was to make explicit the previously implicit authority of the FTC to make investigative disclosures to state attorneys general. *See Interco, Inc. v. FTC*, 478 F.Supp. 103 (D.D.C. 1979), *appeal dismissed*, No. 79–1423 (D.C.Cir. 1980); *Martin Marietta Corp. v. FTC*, 475 F.Supp. 338 (D.D.C.1979), *affirmed as modified*, No. 79–1783 (D.C.Cir.1980). *Also see Fleming v. FTC*, No. 80–2328 (D.D.C. Nov. 24, 1980).

**11.** In addition to the possible state violations involved in this matter, the state attorneys general contend that Jaymar may be liable for damages under the *parens patriae* provisions of the Antitrust Improvements Act of 1976, 15 U.S.C. § 15c (1976).

**12.** On March 26, 1980, Jaymar submitted a proposal granting limited access to the state attorneys general. By the aforementioned letter dated April 14, 1980, the Commission rejected Jaymar's proposal on the ground that *each* state attorney general desired access to the *entire* investigative file.

Indiana seeking a declaratory judgment and injunctive relief barring the proposed disclosures.

After a hearing on Jaymar's motion for a preliminary injunction, the district court enjoined the Commission's proposed release of its investigative files until August 6, 1980.[13] On September 8, 1980, the district court entered a Memorandum and Order dismissing Jaymar's complaint and dissolving the injunction against the Commission's release of the materials.[14] In its ruling, the district court held, *inter alia*, that the Commission's decision to release the materials fell within the agency's unreviewable discretion under § 701(a)(2) of the APA. *See infra* n.1 at 507. On this appeal, the parties essentially contest the validity of that holding.[15] We are satisfied that when the Commission decides to release materials to state attorneys general, this decision is unreviewable, except to assure compliance with the statutory criteria of confidentiality and official law enforcement purpose.

## II. ANALYSIS

A. *The "Committed to Agency Discretion" Exception.* We begin with the observation that there is no specific statutory authorization in the Improvements Act for judicial review of the type of decision involved in this case. By contrast, in various other sections of the Improvements Act, Congress expressly did provide for judicial review of Commission actions with respect to certain confidential materials. *See* 15 U.S.C.A. § 57b–1(g) (Sept. 1980 Supp. West) (judicial review of FTC "custodianship" of investigative materials); 15 U.S.C.A. § 57b–2(c)(3) (Sept. 1980 Supp. West) (judicial review of public disclosure of materials as-

serted to be confidential). It is reasonable, therefore, to infer that Congress did not intend judicial review of FTC disclosure determinations pursuant to § 6(f). *See Board of Trade v. Commodities Futures Trading Commission*, 605 F.2d 1016 (7th Cir. 1979), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980); *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 99 S.Ct. 2388, 60 L.Ed.2d 1017 (1979).

We recognize, on the other hand, that the Supreme Court has enunciated a strong presumption against precluding judicial review, *see Morris v. Gressette*, 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977); *Dunlop v. Bachowski*, 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 and has held that "clear and convincing evidence" of congressional intent to preclude such review is necessary, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 139–141, 87 S.Ct. 1507, 1510–1511, 18 L.Ed.2d 681 (1967). We find that § 701(a)(2) of the APA provides such conclusive evidence. While this statute was enacted prior to the Improvements Act, it evinces congressional intent that essentially discretionary agency actions should be nonreviewable.

The dominant precedent for determining whether agency action falls within the "committed to agency discretion" exception is *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In that case, the statutes at issue prohibited the Secretary of Transportation from using federal funds to finance the construction of highways through public parks if a "feasible and prudent" alternative existed.[16] Petitioners brought suit, ar-

---

**13.** The district court subsequently extended the injunction to September 8, 1980.

**14.** Note that subsequent to the district court's decision of September 8, 1980, both Jaymar and the state attorneys general attempted to settle this case. However, an impasse was reached. On October 15, 1980, the state attorneys general motioned this court to dissolve the present stay and order disclosure of the materials. A month later, on November 23, 1980, Jaymar motioned this court to dismiss the in-

tervenors from these proceedings. On December 10, 1980, this court denied both motions.

**15.** On September 11, 1980, the district court granted Jaymar's motion for a stay of the court's order of September 8, 1980, pending appeal. It further provided that the order will continue in effect until ten (10) days after this court's decision.

**16.** § 4(f) of the Department of Transportation Act of 1966, as amended, 82 Stat. 824, 49 U.S.C. § 1653(f) (1964 ed., Supp. V); § 18(a) of

guing that the Secretary's decision failed to satisfy the statutory criteria. The threshold question considered by the Supreme Court was reviewability in view of the "committed to agency discretion" exception. The court stated that the exception is "very narrow." *Id.* at 410, 91 S.Ct. at 820. It held that the exception is applicable only in those rare instances where *"statutes are drawn in such broad terms that in a given case there is no law to apply." Id.* at 410, 91 S.Ct. at 820, citing S.Rep.No. 752, 79th Cong., 1st Sess., 26 (1945) [Emphasis supplied.] The *Overton* court concluded that since the governing statutes expressly provided for standards to guide the Secretary's discretion, there was indeed "law to apply" and the "committed to agency discretion" exception was inapplicable.[17]

B. *The Improvements Act of 1980.* Our case presents the opposite circumstance. The language of § 6(f), as amended, is clear: "... the Commission may disclose such information ... to any officer or employee of any State law enforcement agency upon the *prior certification* of an officer of any such ... State law enforcement agency that such information will be *maintained in confidence* and will be *used only for official law enforcement purposes."* (Emphasis supplied.) Other than requiring that such information be maintained in confidence and be used only for official law enforcement purposes, the statute is silent on what factors should be considered by the Commission in reaching its decision. Jaymar attempts to avoid the "committed to agency discretion" exception by trying to read into § 6(f), as amended, factors in addition to those which Congress chose to include as preconditions for access. There is no indication in the statute, or in the legislative history, that Congress required the Commission to take account of the additional factors that Jaymar advances.[18] As explained by Senator Ford:

> ... The conference report does not require the Commission to second-guess or look behind the scope of a State attorney general's request for access to the Commission's investigatory files.

126 Cong.Rec. S5678 (daily ed. May 21, 1980). Since Congress did not specify any statutory criteria in § 6(f) as amended, there simply is no "law to apply" within the meaning of *Overton Park.*

Congress' purpose in amending § 6(f) was stated unequivocally by Congressman Preyer:

> In section 3(a) and section 14 of the bill, amending Section 6(f) and adding a new section 21 to the FTC Act, we intended to confirm the Commission's policy of providing documents and information on a nonpublic basis to Federal law enforcement agencies and to State attorneys general for State law enforcement purposes. This sharing of information is in the best spirit of Federal-State cooperation. It enhances the States' ability to remedy, in a manner chosen by the State, economic activities that have adversely affected their citizens. It saves taxpayers' money by minimizing duplication of efforts and by reducing the time and effort necessary to conduct State investigations.

> The purpose of these provisions ... is intended to prevent situations like those occurring in two recent cases. In one, Interco, Inc. against FTC, it took some 17 months of litigation before the Commission was free to disclose documents to

the Federal-Aid Highway Act of 1968, 82 Stat. 823, 23 U.S.C. § 138 (1964 ed., Supp. V).

**17.** The "committed to agency discretion" exception has stimulated extensive debate among scholars. *See* Saferstein, *Nonreviewability: A Functional Analysis of "Committed to Agency Discretion,"* 82 Harv.L.Rev. 367, 372–73 nn. 28 & 29 (1968).

**18.** The additional factors that Jaymar contends should be considered by the Commission are:

1) its interest in preserving the confidentiality of its business information and 2) the States' need for this information for their respective law enforcement purposes. Jaymar obviously assumes that the state attorneys general will release sensitive documents to the public. Given the fact that Congress specifically prohibited such release under § 21(f) of the Improvements Act, we find Jaymar's concern unfounded. *See* n.4 *supra* at 508, and accompanying text.

more than 20 State attorneys general. In another, Martin Marietta Corp. against FTC, the Commission spent 4 months discussing the proposed disclosure with the company personnel, then was enjoined from disclosing the document for another 8 months before the Commission could disclose it.

126 Cong.Rec. H3869–70 (daily ed. May 20, 1980).

Clearly the purpose of the legislation was to expedite the flow of information from federal to state law enforcement officials, in part by eliminating the judicial obstacles which had previously impeded the flow. Our decision today, which upholds the non-reviewability of agency discretion in this area, is consistent with this purpose.

We draw support for our own approach herein from the Ninth Circuit's similar line of reasoning in *City of Santa Clara v. Andrus*, 572 F.2d 660 (9th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 177, 58 L.Ed.2d 167 (1978). *Andrus* in part involved the question whether a decision by the Secretary of the Interior under Section 5 of the Flood Control Act of 1944, 16 U.S.C. § 825s, would be judicially reviewable. The latter section provides in pertinent part that electric power from certain federal dams is to be disposed of "in such manner as to encourage the most widespread use thereof consistent with sound business principles." *Id.* at 667. The court, relying on *Overton Park*, stated: "If, however, no law fetters the exercise of administrative discretion, the courts have no standard against which to measure the lawfulness of agency action. In such cases no issues susceptible of judicial resolution are presented and the courts are according-

ly without jurisdiction." *Id.* at 666. The court said of the statute before it that, " '[It] breathe[s] discretion at every pore'. . . . It does not supply 'law to apply.' " *Id.* at 668. The logical conclusion was that decisions thereunder would *not* be subject to judicial review.[19]

Finally, we note that the federal district court in the District of Columbia recently considered the same statutory scheme as is under discussion here and made the same determination as to nonreviewability, reasoning as follows:

> While a court can and must ensure that statutory limits on agency action are observed, a court may not review agency actions which do not violate any statutory limits and for which no guidelines to the exercise of discretion are given. *See Citizens to Preserve Overton Park, supra.*

*Fleming v. FTC*, No. 80–2328 (D.D.C. Nov. 24, 1980). *See also Natural Resources Defense Council, Inc. v. SEC*, 606 F.2d 1031 (D.C.Cir.1979). *See generally United States v. B.F. Goodrich*, 619 F.2d 798 (9th Cir. 1980); *United States v. Colonial Chevrolet*, 629 F.2d 943 (4th Cir. 1980).

### III. CONCLUSION

■ Based on our analysis of the language, legislative history and purpose of the Improvements Act, we hold that Commission decisions to release materials pursuant to § 6(f), as amended, are discretionary in nature and exempt from judicial review so long as the two statutory prerequisites are satisfied.[20]

■ The court therefore concludes that the merits of the Commission's decision in

---

**19.** In a similar context, this analysis has recently been utilized by the Supreme Court in *Southern Ry. Co. v. Seaboard Allied Milling Corp.*, 442 U.S. 444, 455–56, 99 S.Ct. 2388, 2394–95, 60 L.Ed.2d 1017 (1979). The court stated:

> The statute is silent on what factors should guide the Commission's decision; not only is "[t]he extent of this inquiry . . . not . . . marked . . . with certainty," *cf. United States v. Louisiana*, 290 U.S., at 77, 54 S.Ct. at 32, but also on the face of the statute there is simply "no law to apply" in determining if the decision is correct. *Cf. Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402,

410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136. Similar circumstances have been emphasized in cases in which we have inferred nonreviewability. *See Barlow v. Collins*, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192, *Schilling v. Rogers*, 363 U.S. 666, 674, 80 S.Ct. 1288, 1294, 4 L.Ed.2d 1478.

[Footnotes omitted].

**20.** Our holding today does not restrict the reviewability of agency compliance with the two statutory requirements of confidentiality and official law enforcement purpose.

this case to release its investigative files to the state attorneys general is exempt from judicial review by operation of § 701(a)(2) of the Administrative Procedure Act.[21]

All other arguments and exceptions raised by Jaymar, although not directly addressed by this opinion, have been considered and found to be without merit.

Accordingly, after consideration of the record and the submissions of the parties, with oral argument of counsel, the judgment of dismissal is

Affirmed.

---

**21.** In a related context, *see United States v. Abbott Laboratories,* 597 F.2d 672 (7th Cir. 1979); *Eli Lilly & Co. v. Staats,* 574 F.2d 904 (7th Cir.), *cert. denied,* 439 U.S. 959, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978). *But see Bristol Laboratories Div. v. Staats,* 620 F.2d 17 (2nd Cir. 1980), *affirmed by an equally divided Court,* 451 U.S. ——, 101 S.Ct. 2037, 68 L.Ed.2d 343 (1981).