**Edward J. FLEMING, III, et al., Appellants,**

v.

**FEDERAL TRADE COMMISSION, et al.**

**MILTON BRADLEY COMPANY, et al., Appellants,**

v.

**FEDERAL TRADE COMMISSION, et al.**

Nos. 81–1019, 81–1020.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 29, 1981.

Decided Jan. 12, 1982.

---

4.  15 U.S.C. 78s(e)(2).

5.  Opinion of the Commission, R 457–58.

Francis D. Dibble, Jr., Springfield, Mass., with whom Charles S. Cohen and Richard P. Bock, Springfield, Mass., for Edward J. Fleming, III, and Charles A. Tobin and Edward A. Geltman, for Milton Bradley Co., were on the brief for appellants.

Joanne L. Levine, Atty., F.T.C., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth, Kenneth M. Raisler, Valerie K. Schurman, Asst. U. S. Attys., Ernest J. Isenstadt, Acting Gen. Counsel, F.T.C., and W. Dennis Cross, Asst. Gen. Counsel, F.T.C., Washington, D. C., were on the brief, for appellees.

Charles O. Monk, II, Asst. Atty. Gen., State of Md., Baltimore, Md., with whom Mark D. Gately, Asst. Atty. Gen., State of Md., Baltimore, Md., William J. Guste, Jr., Atty. Gen., State of La., New Orleans, La., Robert Abrams, Atty. Gen., State of N. Y., New York City, Mark White, Atty. Gen., State of Tex., Austin, Tex., Judith W. Rogers, Corp. Counsel, District of Columbia, Charles Reischel, Deputy Corp. Counsel, District of Columbia, and Timothy J. Shearer, Asst. Corp. Counsel, District of Columbia, Washington, D. C., were on the brief, for appellees States, et al.

Before J. EDWARD LUMBARD,* Senior Circuit Judge for the Second Circuit, and ROBB and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

These consolidated appeals present issues of first impression to this court under the Federal Trade Commission Improvements Act of 1980 (the Improvements Act). During its investigation of anticompetitive activities (price fixing) in the school art supplies field, the Federal Trade Commission (FTC) procured documentary materials by

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

the exercise of compulsory process from the Milton Bradley Company and obtained oral testimony from Edward Fleming in his capacity as a vice-president of Milton Bradley.[1] Pursuant to its policy of cooperation with state law enforcement agencies,[2] the FTC agreed to make these materials available to state attorneys general who requested these materials in accordance with Sections 6(f) and 21(b)(6) of the Federal Trade Commission Act, 15 U.S.C. §§ 46(f), 57b–2(b)(6) (Supp. IV 1980).[3] On September 12, 1980, Fleming and Milton Bradley brought suit in the District Court seeking a temporary restraining order and preliminary and permanent injunctions against release of this information without their consent.[4] The District Court denied the application for injunctive relief and granted the Commission's motion for summary judgment. We affirm the decision of the District Court as consistent with the statute and the legislative aim of promoting the efficient flow of information from the FTC to state law enforcement agencies.

## I. BACKGROUND

Under 15 U.S.C. § 46(a) (Supp. IV 1980), the FTC, in carrying out its mandate to ferret out any unfair competition and unfair or deceptive trade acts or practices in or affecting commerce,[5] may conduct investigations of any person or entity whose business or activities affect commerce. Prior to the amendment of § 6(f) in 1980, the Commission was authorized to disclose information so acquired as it deemed expedient in the public interest, except for trade secrets and names of customers.[6] The Commission also assumed the authority under § 6(f), despite the lack of specific authorization, to make non-public disclosures of confidential information in its files to state attorneys general investigating similar activities or practices.[7] Although the Commission's exercise of such authority was affirmed by several district courts, the efficacy of the Commission's disclosure policy was severely diminished by the inexorable litigation attendant to its disclosure decisions.[8]

The 1980 Improvements Act amended § 6(f) of the Federal Trade Commission Act and added § 21(b)(6). The sections specifically authorize the Commission to make available to state law enforcement officials confidential information acquired pursuant to FTC investigatory powers upon the certification of such officials that the information will be maintained in confidence and

---

1. *See in re Binney and Smith, Inc., et al.*, FTC File No. 761–0087. Appellants maintained that some of these materials contained confidential commercial and financial information. The District Court found this not to be a material issue, but assumed, arguendo, that some of the materials might be competitively sensitive. *See* Findings of Fact and Conclusions of Law, Nov. 10, 1980, Joint Appendix (J.A.) 289, 291.

2. 16 C.F.R. § 4.6 (1980).

3. At least some of the access requests were pending when the Improvements Act, Pub.L. No.96–252, 94 Stat. 374 (1980), went into effect. Section 6(f), as amended, and the newly added § 21(b)(6), are applicable. See Memorandum Opinion, Nov. 24, 1980, J.A. 304, at 313–14 nn. 7 & 8, for explication of the interplay between § 6(f) and § 21(b)(6). *See Jaymar-Ruby, Inc. v. FTC*, 651 F.2d 506, 508 n.4 (7th Cir. 1981).

4. Access was granted on the condition that any public use of the documents would be cleared by the FTC General Counsel's Office. J.A. 245. Appellants also sought to enjoin the FTC from granting permission to any state attorneys general in possession of the materials to release such material to any person for any purpose or to use such materials in connection with any private civil treble damage suits or other litigation. *See* Plaintiffs' Supplemental Statement Of Relief Sought Under Preliminary Injunction, Oct. 1, 1980, J.A. 229, 230.

5. *See* 15 U.S.C. § 45(a) (1976).

6. Prior to its amendment by the Improvements Act, Section 6(f) empowered the Commission: "to make public from time to time such portions of the information obtained by it hereunder, except trade secrets and names of customers, as it shall deem expedient in the public interest ...." 38 Stat. 721 (1914) (current version at 15 U.S.C. § 46(f) (Supp. IV 1980)).

7. *See* note 2 *supra.*

8. *See, e.g., Interco, Inc. v. FTC*, 490 F.Supp. 39 (D.D.C.1979); *Martin Marietta Corp. v. FTC*, 475 F.Supp. 338 (D.D.C.1979). *See generally Jaymar-Ruby, Inc. v. FTC*, 651 F.2d 506, 507–08 (7th Cir. 1981).

used only for official law enforcement purposes.[9] The legislation thus codified the Commission's theretofore presumed authority and concomitant policy to share nonpublic information with state law enforcement officials.

The Commission has furnished the materials obtained in its investigation of Milton Bradley and others to several state attorneys general who have complied with §§ 6(f) and 21(b)(6).[10] One of the intended uses of these materials was to be in civil treble damage antitrust suits brought by the attorneys general on behalf of their states or divisions thereof as purchasers of art supplies for their schools.[11] It is this intended use of the materials furnished by the FTC that underlies appellants' appeal. Sections 6(f) and 21(b)(6) authorize disclosure of confidential information to state law enforcement officials only upon the certification of the state official that the information will be used solely for official law enforcement purposes. Appellants' major contention is that a civil treble damage suit, even though brought by the state attorney general, is not an official law enforcement purpose and therefore release of the material for such an improper use violates §§ 6(f) and 21(b)(6) of the Act. Appellants also

contend that the language of §§ 6(f) and 21(b)(6), specifically the term "may disclose," bespeaks a congressional imperative that the Commission engage in an elaborate balancing test prior to disclosure, and that the Commission's failure to engage in such a process evinced a failure to exercise any discretion by the Commission. Finally, appellants maintain that the Commission's disclosure decision is subject to full judicial review.

## II. ANALYSIS

The cornerstone of appellants' argument is that a civil antitrust suit brought by a state attorney general does not constitute an official law enforcement purpose under §§ 6(f) and 21(b)(6) of the Act. To support this contention appellants characterize the treble damage remedy as primarily remedial and private in nature, alleging that the residual punitive effects are merely an incidental function of the remedy and do not rise to the level of official law enforcement. Appellants assert that whereas the treble damage suit is remedial and compensatory in nature, law enforcement must be punitive or prophylactic. Although this analysis may be accurate in the context of private litigation, it cannot account for the clear

---

**9.** Amended § 6(f) provides that the Commission has power

> to make public . . . such portions of the information obtained by it hereunder as are in the public interest . . . *Provided*, That the Commission shall not have any authority to make public any trade secret or any commercial or financial information which is obtained from any person and which is privileged or confidential, except that the Commission may disclose such information to officers and employees of appropriate Federal law enforcement agencies or to any officer or employee of any State law enforcement agency upon prior certification of an officer of any such Federal or State law enforcement agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.

15 U.S.C. § 46(f) (Supp. IV 1980). Section 21(b)(6), in relevant part, provides:

> The custodian may make such materials available to any State law enforcement agency upon the prior certification of any officer of such agency that such information will be maintained in confidence and will be used only for official law enforcement purposes.

15 U.S.C. § 57b–2(b)(6) (Supp. IV 1980).

**10.** The parties entered into a Stipulation and Order establishing a procedure for limiting further disclosure of the materials during the pendency of this action that was approved by the District Court on October 2, 1980. J.A. 247, 308.

**11.** At least eleven states that have requested access to the FTC's investigative files are engaged in civil antitrust litigation for treble damages and ancillary relief against Milton Bradley and other companies under Sections 4 & 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26. Some of those suits also allege pendent state antitrust law violations. *See* J.A. 293, 307. These cases were assigned to the Judicial Panel on Multidistrict Litigation and were consolidated for pretrial proceedings in the Northern District of Ohio on August 5, 1980. *In re Art Materials Antitrust Litigation*, M.D.L. No. 436 (N.D. Ohio). The FTC has received requests for access to the investigative file at issue from at least 28 state attorneys general and the Corporation Counsel of the District of Columbia. J.A. 306.

implication in the legislative history of §§ 6(f) and 21(b)(6) that official law enforcement purposes include civil treble damage actions brought by state attorneys general. The simplistic dichotomy proposed by appellants ignores the inherent ambiguity of the treble damage action, which clearly represents a confluence of all these characteristics. The Supreme Court recently noted that "the very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct . . . ." Conversely, it also recognized the "remedial" nature of what appellants assert are strict law enforcement actions, including criminal, injunctive, and administrative proceedings. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639–643, 101 S.Ct. 2061, 2066–2068, 68 L.Ed.2d 500 (1981). A civil antitrust suit brought by a state may not be a traditional method of law enforcement but the congressional intent to promote sharing among various law enforcement levels and thereby eliminate costly duplication of effort cannot be limited by tradition.

█ Prior to the passage of the Improvements Act in 1980, the Commission faced a continuing uphill struggle in the effort to carry out a policy of sharing its investigative materials with state law enforcement officials. Under the unamended § 6(f) the Commission could make public information it obtained, other than trade secrets and names of customers, as it deemed expedient in the public interest. Judicial decisions interpreting the old § 6(f) and its legislative history also found clear authorization for the Commission's nonpublic releases of trade secrets and names of customers,[12] but the Commission was severely constrained in its cooperative endeavors by the onerous litigation attendant to those disclosure efforts. Two rather egregious cases seem to have precipitated the amendment of § 6(f) and the addition of § 21(b)(6) in the 1980 Improvements Act. As stated by one of the Act's sponsors, Representative Preyer:

> The purpose of these provisions is to make it crystal clear that the Commission has this authority and that it should be

able to exercise it without undue delay and restraint. It is intended to prevent situations like those occurring in two recent cases. In one, Interco, Inc. against FTC, it took some 17 months of litigation before the Commission was free to disclose documents to more than 20 State attorneys general. In another, Martin Marietta Corp. against FTC, the Commission spent 4 months discussing the proposed disclosure with company personnel, then was enjoined from disclosing the document for another 8 months before the Commission could disclose it. By clarifying the law, we hope to put an end to litigation of this type which needlessly delays and hampers the ability of our State attorneys general to protect the citizens of their States.

126 Cong.Rec. H3870 (daily ed. May 20, 1980). In *Martin Marietta Corp. v. FTC*, 475 F.Supp. 338 (D.D.C.1979), as the District Court noted below, the Commission was finally upheld in disclosing information to a state attorney general for use in an antitrust civil damage suit. This explicit approval of the ultimate decision in *Martin Marietta* manifests Congress' understanding that disclosure for this purpose is within the spectrum of law enforcement that the Improvements Act was intended to facilitate. There is no doubt that a civil antitrust damage suit brought by a state attorney general qualifies as an official law enforcement purpose for disclosure under the FTC Act.

█ The legislative history also persuades us of the error of appellants' contention that §§ 6(f) and 21(b)(6) require the Commission to conduct an elaborate balancing test of competing interests prior to disclosure. As a necessary corollary, we conclude that the scope of judicial review is limited to the Commission's compliance with the statutory prerequisite of a certification of confidentiality and use only for official law enforcement purposes. In so deciding we follow the Seventh Circuit's decision in *Jaymar-Ruby v. FTC*, 651 F.2d 506 (7th Cir. 1981), the only other case that

---

**12.** *See Interco, Inc. v. FTC,* 490 F.Supp. at 44–45; *Jaymar-Ruby, Inc. v. FTC,* 651 F.2d at 508.

has yet arisen under the relevant sections of the Improvements Act. In *Jaymar-Ruby*, which also involved requests by state attorneys general for access to FTC investigative files, the Seventh Circuit held that "based on our analysis of the language, legislative history and purpose of the Improvements Act, we hold that the Commission decisions to release materials pursuant to § 6(f), as amended, are discretionary in nature and exempt from judicial review so long as the two statutory prerequisites are satisfied." *Id.* at 512.[13]

The Seventh Circuit's decision is buttressed by a congerie of statements in the legislative history of the Improvements Act revealing a clear congressional intent to allow the Commission to continue its policy of sharing information with state attorneys general free from the expensive and burdensome litigation and delay that had so complicated disclosure under the unamended Act. Nonetheless, appellants urge that we reject the thorough analysis of *Jaymar-Ruby* and fashion a balancing standard for the Commission merely because the Congress used the term "may disclose" as opposed to an imperative form such as "shall." Such a balancing test would assertedly weigh the need of the state for the information, the potential harm from the submitting party from disclosure, alternate means of obtaining the material to be disclosed, and presumably the public interest in disclosure. The Commission's exercise of discre-

tion within the bounds of this test would accordingly be subject to full judicial review. Such a test, however, rather than expediting the flow of information as the amendments were unarguably designed to do, would in fact render disclosure even more difficult than it was when the Commission merely presumed its authority under the unamended Act.

A balancing standard, and its attendant constraints on the Commission's discretionary authority, would impose an untoward burden on the Commission in conflict with the clear policy behind the Improvements Act. The legislative history is consistent only with a grant of almost unfettered discretion to the Commission, a discretion designed to avoid the litigation engendered by the pre-amendment disclosure provisions. To achieve this purpose, Congress provided that the Commission be constrained only by the statutory prerequisites that the requesting attorney general agree to keep the materials confidential and to use them only for official law enforcement purposes.[14] Congress' choice of "may" obviously indicates a margin of discretion inuring to the benefit of the FTC rather than the submitting party.[15] It would have been incongruous for Congress to *imply* a balancing test when doing so would have frustrated the primary purpose of these amendments by providing a new genesis for the litigation and delay that these amendments were meant to eliminate.

---

**13.** The Court also held that the disclosure decision is committed to agency discretion under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2) (1976), and that the decisional process is entrusted to the expertise of the Commission. 651 F.2d at 510–12.

**14.** This is consistent with the overall scheme of the Act to encourage various state law enforcement activities intended to curb antitrust violations. As Representative Preyer explained:

> In section 3(a) and section 14 of the bill, amending Section 6(f) and adding a new section 21 to the FTC Act, we intended to confirm the Commission's policy of providing documents and information on a nonpublic basis to Federal law enforcement agencies and to State attorneys general for State law enforcement purposes. This sharing of information is in the best spirit of Federal-State cooperation. It enhances the States' ability

to remedy, *in a manner chosen by the State*, economic activities that have adversely affected their citizens. It saves taxpayers' money by minimizing duplication of efforts and by reducing the time and effort necessary to conduct State investigations.
126 Cong.Rec. H3870 (daily ed. May 20, 1980) (emphasis added).

**15.** In effect, Congress statutorily authorized the Commission's implementation of policy rather than mandating disclosure. The use of "may" accordingly means no more than that the Commission need not automatically accede to each and every valid request for access to the Commission's files. As long as the Commission is not acting in an arbitrary or capricious manner, it may deem disclosure inappropriate or undesirable in certain cases as to whose nature we need not speculate. It is, in fact, Commission policy not to share documents with state offi-

Appellants urged at oral argument that the Court somehow take into account the special sensitive nature of the materials at issue. It is of no consequence that the materials to be disclosed may be highly sensitive or confidential, as for the purposes of this case we assume they are.[16] The Commission is clearly under no duty to afford special consideration to such material, as the language of §§ 6(f) and 21(b)(6) serves no purpose other than to authorize disclosure of sensitive or confidential material merely upon the required certification.[17]

## CONCLUSION

We hold that the District Court correctly construed the legislation at issue as meant to promote the flow of information from federal to state law enforcement officials and to eliminate the judicial delays that compromised the Commission's cooperative efforts. In limiting the scope of judicial review to whether the Commission has complied with the statutory prerequisites of §§ 6(f) and 21(b)(6), we acknowledge the discretionary authority vested in the Commission by Congress through these statutes. We conclude that the Commission's disclosure was entirely within its discretion as long as the statutory prerequisites were met.[18]

Congress wanted the Improvements Act to cut down on judicial review and delay. That policy is well within congressional power, and the courts have an obligation to give such a policy ungrudging effect. We affirm the District Court's grant of summary judgment in favor of the Federal Trade Commission.

*Affirmed.*

---

cials automatically, but rather to evaluate requests on a case-by-case basis. *See* Findings of Fact and Conclusions of Law, Nov. 10, 1980, J.A. 289, 292.

**16.** The record does not reveal the actual competitive sensitivity and confidential nature of the information sought to be released in this case. Inasmuch as appellants erroneously assumed that confidential materials are entitled to special consideration prior to disclosure under §§ 6(f) and 21(b)(6), the District Court assumed for the purposes of summary judgment the confidentiality of the material. *See* n.1 *supra.*

**17.** If these sections were not specifically promulgated to expedite the nonpublic disclosure of confidential information they would be superfluous. There would be no need for even the standards established in these sections inasmuch as nonsensitive material would be in the public domain under the auspices of disclosure provisions such as the Freedom of Information Act.

**18.** We need not consider whether the Commission must evaluate the state attorney general's specific intended use of the material or instead may rely on the attorney general's certification that the materials will be used only for official law enforcement purposes. In the instant case, the Commission was fully cognizant of the states' intended use of the materials and correctly determined such use to be authorized. For example, the state of Maryland filed its civil treble damage suit in federal court on June 19, 1980, and the FTC did not decide to grant discretionary release of the materials to Maryland until July 11, 1980. *See* J.A. 68. Additionally, during the disclosure process prior to the bringing of this action, the General Counsel's Office specifically rejected appellants' argument that the states were not seeking the documents for official law enforcement purposes. *See* Findings of Fact and Conclusions of Law, Nov. 10, 1980, J.A. 289, 294.